GEORGE ALLING'S SONS COMPANY *vs.* THE CHESHIRE STREET RAILWAY COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1910.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The services or material for which a lien upon a railroad may be acquired by virtue of the provisions of General Statutes, § 4140, must have been rendered or furnished "under a contract with or approved by" the corporation owning or managing the railroad; and therefore no lien can be acquired by one for labor and material furnished under a contract between himself and a subcontractor, to which the railroad corporation is not a party and of which it had no knowledge; nor can the right of lien be sustained upon the theory that the materials or services so furnished were such as were called for by the original contract between the corporation and the principal contractor, and therefore must necessarily have been approved by the railroad company.

In a suit to foreclose a lien under § 4140, an allegation that the materials were furnished by the plaintiff with the knowledge and approval of the defendant railroad company, under an agreement with a subcontractor, is sufficiently broad to entitle the plaintiff to prove, if he can, that his agreement with the subcontractor was "approved" by the defendant.

A lienor, under § 4140, is not obliged to file his certificate of lien with the town clerk of every town in which the railroad property is situated; a filing in the office of the secretary of state is sufficient.

Argued January 20th—decided February 3d, 1910.

ACTION to foreclose a mechanic's lien on an electric railway, its property and franchises, brought to and tried by the Superior Court in New Haven County, *Curtis, J.,* upon an agreed statement of facts; judgment

for the plaintiff, and appeal by the defendants. *Error, and cause remanded for the rendition of judgment for the defendants.*

This is an action against an electric street-railway company to foreclose a lien claimed to be given the plaintiff by § 4140 of the General Statutes, which is as follows: "If any person shall have a claim for materials furnished or services rendered for the construction of any railroad, or any of its appurtenances, under any contract with or approved by the corporation owning or managing it, ⁄ . . . said claim shall be a lien on said railroad, . . . and such lien shall be asserted, perfected, and foreclosed in all respects in accordance with the provisions of §§ 4136, 4137, 4138, and 4139, except that the certificates of the lien and of its discharge shall be filed in the office of the secretary of state. . . ."

The complaint contains two counts, the third paragraphs of which are as follows:—

First Count. Par. 3. "The plaintiff, with the knowledge and approval of the defendant, The Cheshire Street Railway Company, furnished materials in the construction of the above described railroad under an agreement with The Walther-Burke Construction Company (the said Walther-Burke Construction Company having, at that time, viz: between May 1, 1904, and September 1, 1904, a contract with Fred T. Ley & Company to construct a portion of said road, said Fred T. Ley & Company then being subcontractors, with the approval of the defendant, The Cheshire Street Railway Company, under the original contractor, George J. Roberts, with whom the defendant, said Cheshire Street Railway Company, had entered into a contract to construct said railroad), under which said agreement, between the plaintiff and said Walther-Burke Construction Company, the plaintiff was to furnish materials in the construction of said railroad."

Second Count. Par. 3. "The plaintiff furnished materials in the construction of the above described railroad under an agreement with the Walther-Burke Construction Company (the said Walther-Burke Construction Company having at that time, viz: between May 1, 1904, and September 1, 1904, a contract with Fred T. Ley & Company to construct a portion of said road, said Fred T. Ley & Company then being subcontractors, with the approval of the defendant, The Cheshire Street Railway Company, under the original contractor, George J. Roberts, with whom the defendant, said Cheshire Street Railway Company, had entered into a contract to construct said railroad), under which said agreement between the plaintiff and said Walther-Burke Construction Company, the plaintiff was to furnish materials in the construction of said railroad."

Each count alleged that the plaintiff had given due notice of intention to claim a lien, and that a certificate had been duly filed with the secretary of State.

The defendant demurred to the entire complaint upon the grounds that it was "not alleged therein that the plaintiff had any contract with or approved by the defendants or either of them," and that it did not appear that a certificate of lien had been filed with the town clerk, as required by § 4136 of the General Statutes.

This demurrer was overruled (*Shumway, J.*), and upon the issues thereafter framed the court (*Curtis, J.*), by stipulation of the parties, found these facts:—

On or about August 22d, 1902, defendant, The Cheshire Street Railway Company, made a contract in writing with George J. Roberts of Philadelphia, to furnish all necessary labor, tools and materials, and to construct its said electric railway.

On June 11th, 1904, said George J. Roberts made a contract in writing with Fred T. Ley & Company of

Springfield, Massachusetts, to furnish all necessary labor, tools and materials, and to construct, in a substantial and workmanlike manner, said electric railway upon the route above described. A part of said contract in writing is as follows: "The said party of the second part further agrees not to assign, transfer or sublet the aforesaid work, or any portion thereof, without the written consent of the party of the first part; and that any assignment, transfer or subletting without such written consent shall, in every case, be absolutely void."

On May 26th, 1904, said Fred T. Ley & Company made a contract in writing with The Walther-Burke Construction Company of Philadelphia, Pennsylvania, to furnish all necessary labor, tools and materials to construct an electric railway roadbed upon a portion of the route above referred to. Said agreement was made subject to the approval of Mr. A. B. Hill of New Haven, Connecticut, and Mr. George J. Roberts.

On June 28th, 1904, Fred T. Ley & Company wrote the following letter concerning said contract to said A. B. Hill:—

"June 28, 1904.

"My dear Mr. Hill: We have made a contract subject to your approval, with the Walther-Burke Construction Company of Pittsburgh, Pa., for doing the earth excavation, rock excavation, and building pipe culverts and masonry between Stations 0 and 17. In accordance with the terms of the contract, we would be pleased to have both your and Mr. Roberts' approval, and trust to receive same at your convenience. . . .

"FRED T. LEY & COMPANY."

Mr. Hill referred this letter to George J. Roberts, and on June 30th, 1904, the latter sent the following reply to Fred T. Ley & Company:

"Philadelphia, June 30th, 1904.
"Fred T. Ley & Co., Springfield, Mass.

"Dear Sirs: Your letter of June 28th to Mr. Hill has been forwarded to me. I do not intend to restrict you as to whom you may employ on this work, but I will have to hold you responsible for the character of work done by any of these men that you may employ. We shall look upon the Walther-Burke Construction Co. as your employees. We cannot recognize them as principals. Yours truly, G. J. ROBERTS."

Unless it appears from all the facts stated herein, the original contractor, George J. Roberts, did not consent to the assignment, transfer, or subletting of said work, or any portion thereof, to the said Walther-Burke Construction Company; and the agreement between said Fred T. Ley & Company and The Walther-Burke Construction Company was never approved by either of the defendants or Mr. A. B. Hill of New Haven, Connecticut, or said George J. Roberts, unless it appears from all the facts stated herein.

Accordingly, The Walther-Burke Construction Company began to do a part of said work, and employed a great number of laborers, mechanics, etc., and men with teams, and this the said Hill and Roberts and the defendants well knew, and made no objection at any time thereto.

In accordance with the provisions of the contract between George J. Roberts and Fred T. Ley & Company, the said Roberts appointed the said A. B. Hill to inspect the materials furnished and the work done under said Roberts-Ley contract, and to see that the same corresponded with the specifications contained therein; and the said A. B. Hill did inspect said materials and work from time to time, including that done by The Walther-Burke Construction Company.

There was no agreement in writing between the plaintiff and said Walther-Burke Construction Company.

Neither of the defendants, nor the original contractor, George J. Roberts, nor the subcontractor, Fred T. Ley & Company, had any actual knowledge that the said Walther-Burke Construction Company had employed the plaintiff to furnish the material described in its bill of particulars, and none of said persons at any time approved of any contract or agreement between said Walther-Burke Construction Company and the plaintiff, unless it appears from the facts stated herein.

The material furnished by the plaintiff in constructing said railroad bed was accepted by The Walther-Burke Construction Company, and subsequently by Fred T. Ley & Company, and by said George J. Roberts and by the defendants as a part of the work done in the construction of its electric street-railway above described; and the benefit thereof was retained by defendant, The Cheshire Street Railway Company, and transferred by it to its assignee, The Connecticut Railway and Lighting Company, the other defendant.

Subsequent to September 21st, 1904, and before the completion of said electric railway upon said route, defendant, The Cheshire Street Railway Company, transferred all its franchises and rights therein, together with its rights and liabilities under its contract with said George J. Roberts, to defendant, The Connecticut Railway and Lighting Company; and said Connecticut Railway and Lighting Company completed said railway, and before the beginning of this action equipped and began to operate the same, and has ever since owned, managed, operated, and controlled the same.

There is now due the plaintiff, on account of the material furnished by it prior to July 26th, 1904, as above stated, to The Walther-Burke Construction Company,

the sum of $590.36, with interest from August 26th, 1904, no part of which has ever been paid.

On September 21st, 1904, the plaintiff gave defendant, The Cheshire Street Railway Company, due notice of intention to claim a lien, and on September 21st, 1904, the plaintiff lodged a certificate of lien in writing by it, duly signed and sworn to, with the secretary of the State of Connecticut, which was duly recorded in all respects as required by law, in the records of the office of said secretary of State.

The plaintiff has never lodged any notice or certificate whatever in the office of the town clerk of any of the towns in which said electric railway is situated.

Payments for all work done and materials furnished in the construction of this railroad were made from time to time by the several contractors in accordance with the terms of their respective contracts; but The Walther-Burke Construction Company did not finish the work required by their contract with Fred T. Ley & Company, but abandoned the same and left the State without paying the plaintiff for the materials it had furnished as aforesaid.

There was sufficient money due said George J. Roberts from defendant, The Cheshire Street Railway Company, to pay the plaintiff's claim in full when the notice of intention to claim a lien was given said company by the plaintiff, and when the certificate of lien was filed by the plaintiff as above stated.

Upon these facts the court rendered judgment for the plaintiff.

The three reasons of appeal assigned by the defendant are based upon the action of the court in overruling the demurrer, and in holding that the agreed statement of facts supported the averments of paragraph three in either count of the plaintiff's complaint.

*Terrence F. Carmody*, for the appellants (defendants).

*Dennis W. Coleman* and *Charles Kleiner*, for the appellee (plaintiff).

HALL, J.   The demurrer to the entire complaint was properly overruled.   Certainly the averments of paragraph 3 of the first count are sufficiently broad to permit the plaintiff to prove that its agreement with The Walther-Burke Construction Company was approved by the defendant.

The plaintiff was not required to file a certificate of lien with the town clerk of every town in which the railroad propery was situated.   To relieve the lienor, in cases of liens upon railroads, from filing an unnecessarily large number of certificates was evidently the purpose of the exception of § 4140 requiring the certificates to be filed with the secretary of State.

The questions raised by the second and third reasons of appeal relate principally to the construction to be placed upon these words of § 4140.   "If any person shall have a claim for materials furnished or services rendered for the construction of any railroad . . . under any contract with or approved by the corporation. . . ."   The broad claim is made by the plaintiff that by this language the person furnishing materials or rendering services required and used in the construction of a railroad is given a lien, although he has made no contract for them with the corporation owning or managing the railroad, and although the contract which such person himself made for them was never approved by the company owning or managing the railroad.   In other words, that the requirements of § 4140 are satisfied if the materials furnished or services rendered comply with the provisions of the original contract, or with those of some other than the original contract, which

has been approved by the corporation, but to which the person furnishing the materials or rendering the services was not a party. Stated with reference to this case, the plaintiff's claim is that since the materials furnished by the plaintiff under its contract with The Walther-Burke Construction Company were such as were called for by the original contract between the corporation and Roberts, and since they entered into the construction of the railroad, and the defendants received the benefit of them, they are to be regarded as furnished under a contract made with or approved by the defendant Cheshire Street Railway Company, although the latter in no other way was a party to or approved of the plaintiff's contract with the Walther-Burke Construction Company.

The language above quoted is not fairly susceptible of the construction claimed by the plaintiff. It is undoubtedly true that all the materials called for by the terms of the original contract between the railroad company and Roberts, by whomsoever furnished, are materials for the furnishing of which the defendant street-railway company contracted, and of which they approved. The fact that they are the materials which the railroad corporation contracted for renders them materials of which they approved. But the fact that the railroad company contracted for them with Roberts, and that they were therefore necessarily materials the furnishing of which the railroad company approved, does not render them materials which the plaintiff furnished under a contract with the defendant, nor materials which the plaintiff furnished under a contract of which the defendant approved. The lien given by this section is based upon a claim. The language of the section is "and said claim shall be a lien." That claim must be one which the lienor has by virtue of some contract. By "virtue of any contract" were the

words of the original Act. Public Acts of 1871, p. 722, Chap. 137. The words of a similar provision, in § 4135, relating to liens on buildings, are: "If any person shall have a claim . . . for materials furnished or services rendered in the construction . . ., and such claim shall be by virtue of an agreement," etc. The words "by virtue of any contract," or "under any contract," refer to contracts to which the one furnishing the materials or rendering the services is a party. The plaintiff was not a party to the contract between the corporation and Roberts, nor to that between Ley & Company and the Walther-Burke Construction Company. The only contract which gave the plaintiff any legal claim was that between itself and The Walther-Burke Construction Company, and it appears that the defendant never approved of that contract, or even knew of its existence, or of the contract of The Walther-Burke Construction Company with Ley & Company. The words "contract with or approved by," manifestly refer to two different kinds of contracts, one to which the railroad company was a party, and the other to which it was not, but which it approved of. If the person furnishing materials or rendering services was a party to the first, he was given a lien; if he was not, but his claim arose under another contract, he had a lien only when such contract was approved by the corporation. The words "approved by the corporation" naturally refer to another contract than one made by the corporation. Had it been intended to give a lien for all materials furnished or services rendered, which, having been used in the structure, complied either with the provisions of the original contract or some other contract approved by the corporation, even though the lienor was not a party to it, we should expect to find a provision that any person furnishing materials or rendering services which complied with the terms of any contract ap-

proved by the corporation, should have a lien, etc. But that the contract to be approved of by the owner is one to which the claimant is a party, and that such claimant does not acquire a lien merely because he has furnished materials required by the terms of the original contract, even though such materials have entered into the structure, was clearly decided in *Alderman* v. *Hartford & New York Trans. Co.*, 66 Conn. 47, 33 Atl. 589. In that case the owner had contracted with *A* for the building of a house. *A* made a subcontract with *B*, without objection from the owner. *B* ordered materials from the plaintiff which, with the knowledge of the owner of the land that they came from the plaintiff, were, with such owner's acquiescence, delivered and used in the building. Upon these facts it was held that the materials were not furnished by the plaintiff "by virtue of an agreement with or by consent of the owner," within the meaning of those words in § 4135.

But the plaintiff claims that the provision of § 4140, limiting the right of lien upon a railroad to claims based upon a contract made with the corporation, or approved by the corporation, was virtually repealed by the provision of § 1 of chapter 121 (p. 1052) of the Public Acts of 1899, and chapter 80 (p. 1228) of the Public Acts of 1901, now the last clause of § 4137 of the General Statutes. That provision is as follows: "No subcontractor, without a written contract complying with the provisions of this section, and no person who furnishes materials or renders services by virtue of a contract with the original contractor or with any subcontractor, shall be required to obtain an agreement with, or the consent of, the owner of the land, as provided in § 4135, to enable him to claim a lien under this section."

This provision, it is claimed, so applies to or has been incorporated in § 4140 as to enable one to obtain a lien upon a railroad, although the contract by virtue

of which he has furnished materials or rendered services was neither made with nor approved by the railroad company, within the meaning of those words in § 4140.

It does not appear, as seems to be claimed, that this question was decided in *Egan* v. *Cheshire Street Ry. Co.*, 78 Conn. 291, 61 Atl. 950. In holding that the complaint in that case was not demurrable, we only decided that the averments of the complaint would permit proof of facts which would entitle the plaintiff to a lien under § 4140. Those averments were similar to those of paragraph 3 of the first count of the complaint in this action, which we have already said are sufficiently broad to permit proof that the agreement under or by virtue of which the plaintiff's claim arose was approved by the railroad company.

In the case of *Barlow Brothers Co.* v. *Gaffney*, 76 Conn. 107, 55 Atl. 582, it was held that the plaintiff, having furnished materials and rendered services in the construction of a building by virtue of a contract with a subcontractor, was not required to obtain an agreement with or the consent of the owner of the land, as provided in § 4135, to enable him to claim a lien. But it is to be remembered that the lien there claimed was upon a building, as given by § 4135, and not upon a railroad, as given by § 4140. In that case the various legislative Acts regarding liens upon buildings and their appurtenances, not upon railroads, from 1836 down to 1902, are reviewed.

Upon examining such legislation we find that when in 1871 an Act was passed giving a right of lien upon railroads, now § 4140 of the General Statutes, it differed materially from the statute regarding mechanics' liens upon buildings, which had been in force for many years, in this: that while the latter gave a right of lien to any person who had a claim for materials furnished, or services rendered in the construction of any build-

ing or its appurtenances exceeding the sum of $25 (Rev. of 1866, Title 38, p. 549; id. 1875, p. 359, Chap. 7, § 9), the Act of 1871 gave a right of lien upon railroads only to those having claims for materials or services *by virtue of a contract with or approved by the corporation* owning or managing the railroad. This difference continued until 1875, when, as was said in *Barlow Brothers Co.* v. *Gaffney,* 76 Conn. 107, 55 Atl. 582, "the important provision requiring the claim to be 'by virtue of an agreement with or by consent of the owner' " of the land upon which the building was erected, was added to the building lien law by amending § 9 of chapter 7 of the Revision of 1875 by the insertion of those words. Public Acts of 1875, p. 9, Chap. 15. This placed practically the same limitation upon the character of the claims for which a lien could be had upon buildings and upon railroads. In 1879 it was enacted that no subcontractor, with or without a written contract, should be required to obtain an agreement with, or the consent of, such owner, to enable him to obtain a lien under § 11 of chapter 7, p. 360, of the Revision of 1875. Public Acts of 1879, p. 384, Chap. 43. And in 1899 and 1901 were passed the Acts containing the provision above quoted, that no subcontractor, and no person furnishing materials or rendering services by virtue of a contract with the original contractor or with any subcontractor, should be required to obtain an agreement with, or the consent of, the owner of the land. The Act of 1901 was passed as an amendment to § 3020 of the Revision of 1888, and it expressly states that the agreement with, or the consent of the owner, to which it refers, is that provided for in § 3018 of the Revision of 1888, which was the section giving liens upon buildings and the land upon which they stand. Section 3022 of the Revision of 1888, which was the section providing for liens upon railroads, is not named in these

Acts of 1899 and 1901. And so, too, in § 4137 of the
Revision of 1902, the agreement with, or consent of, the
owner, which is no longer required to be obtained, is
expressly stated to be that provided for in § 4135, the
section which provides for a lien upon buildings and
the land upon which they stand, and no mention is made
of the "contract with or approved by the corporation
owning or managing" a railroad, provided for in § 4140
to enable one to obtain a lien upon a railroad. There
is now, and has been since 1901, practically the same
marked difference as to requiring the lienor to have an
agreement with, or one approved by, the owner, be-
tween § 4140 and § 4135, modified as the latter is by
the last clause of § 4137, as existed from 1871 to 1875
between the law giving liens upon railroads and that
giving liens upon buildings.

But it is claimed that by the language of § 4140—
"such liens shall be asserted, perfected, and foreclosed
in all respects in accordance with the provisions of"
§ 4137 and other named sections—said last clause of
§ 4137 is made to apply to § 4140. But the language
just quoted was manifestly intended to describe the
manner in which "such liens," that is, the liens given by
§ 4140, should be "asserted, perfected, and foreclosed,"
namely, by notice, certificate, and action. The language
of the original Act of 1871 was that "the manner of fil-
ing, perfecting and foreclosing said lien, shall be in ac-
cordance with" certain named provisions. In the Revi-
sion of 1888 the language is, "the manner of asserting
and perfecting such lien, by notice, certificate, and fore-
closure, shall be in all respects in accordance with the
provisions of the four preceding sections," with the ex-
ception as to filing the certificate with the town clerk.
In the Revision of 1902 the words "notice, certificate,
and foreclosure" were very properly omitted, as they
were clearly covered by the words "in all respects."

The last clause of § 4137 does not do away with the requirement of § 4140, that to enable one to obtain a lien upon a railroad the materials furnished or services rendered by him must be under a contract with or approved by the corporation owning or managing the railroad. If it could be said that the last clause of § 4137, which we have been considering, applies to § 4140, it might still be questioned whether the Walther-Burke Construction Company, with which the plaintiff contracted, was a subcontractor within the meaning of that word in said provision in the Acts of 1899 and 1901. See *Barlow Brothers Co.* v. *Gaffney,* 76 Conn. 107, 111, 55 Atl. 582; *Spaulding* v. *Thompson Eccl. Soc.,* 27 Conn. 573, 577. But it is unnecessary for us to decide that question in this case. The facts show that the plaintiff did not contract with The Cheshire Street Railway Company, and that its contract with the Walther-Burke Construction Company, under which alone it furnished materials, was not approved by the railroad company. It therefore has no lien upon the railroad property.

There is error in the final judgment, and it is set aside, and the case remanded with directions to render judgment for the defendants.

In this opinion the other judges concurred.