ABRAHAM STONE *vs.* HOVHANNES B. MOOMJIAN ET ALS.

Third Judicial District, New Haven, January Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

In apportioning, among lienors, the balance due from the owner of a building to the original contractor, all mechanics or materialmen who have given notice of their intention to claim liens and have seasonably filed their certificates, stand upon the same footing and share in the fund pro rata (§ 4138), notwithstanding one of them may be entitled, because of a payment made to the original contractor by the owner after having received notice of such claim, to enforce his lien for such further sum, not exceeding the amount of such payment, as may be necessary to satisfy his claim in full.

Lienors are in no true sense creditors of the owner of the building; their contract relations are with the contractor, whose earnings, in the hands of the owner, constitute the fund to which they are entitled by statute to look for the satisfaction of their claims.

As a general rule a court of equity will not marshal securities between two creditors unless it appear that they are creditors of the same debtor, that there are two funds belonging to that debtor, and that but one of them has the right to resort to both funds.

Where the contested issues involve not only the rights of the parties respondent in a fund which the plaintiff brings into court, but also the personal liability of the plaintiff in addition, it is error to allow him counsel fees upon the theory that the case is one of interpleader.

Argued January 16th—decided April 30th, 1918.

Suit to foreclose a mechanic's lien, brought to and tried by the Superior Court in New Haven County, *Case, J.;* facts found and judgment rendered that the plaintiff receive the sum of $774.11 and his costs, amounting to $72.96, out of a fund in the hands of the defendant Moomjian, and that the balance of said fund, amounting to $2.93 only, be divided pro rata among four other defendants, and appeal by the last-named parties. *Error and judgment reversed.*

On August 15th, 1915, the defendant Moomjian, the owner of a building lot in New Haven, contracted with the defendant Ruderman for the construction thereon of a two-family dwelling-house for the agreed price of $3,500. The building was completed according to the contract, save for the failure to conform in certain respects to the specifications, and the contract price, less a deduction of $250 by reason of that failure, was earned by the contractor. The plaintiff and four of the parties defendant, to wit: Bernstein, Rappaport, the Connecticut Adamant Plaster Company, and Setlow and Finkelstein, did work or furnished material, or both, in the construction of the building as subcontractors under Ruderman. As the work progressed Moomjian made five payments to Ruderman amounting in the whole to $2,200, thus leaving $1,050 due the latter. This amount remains unpaid. The last one of the payments was made January 20th, 1916. At that

time the construction of the building was still in progress.

November 1st, 1915, the plaintiff served upon Moomjian notice of his intention to claim a lien. Previous to that date two of the owner's payments to the contractor, amounting to $1,000, had been made. No other subcontractor had then served a notice, and no one thereafter did so until February 18th, 1916, when one of the defendants made such service. On March 23d, 25th and 31st following, the three remaining subcontractor lienor defendants named above, followed suit. All of these four parties likewise filed certificates of lien for the several sums claimed to be due them, amounting in the whole to $1,006.75. The plaintiff filed his certificate for $712.81 on December 17th, 1915, and before the last two payments, amounting to $800, were made by Moomjian to Ruderman. No question is made as to the validity of any of these five liens, and the certificates correctly state the amounts due to each of the parties. One other lien was filed by the defendant Catania. The trial court found that nothing was due to him, and disallowed his claim. From this ruling and decision he has not appealed.

The plaintiff brought his action by complaint claiming a foreclosure of his lien and $1,000 damages. The defendant Moomjian answered setting up in his second defense that $1,300, less a deduction for noncompletion of the work according to the contract, claimed to amount to $750, was due from him to Ruderman, that he made no claim to the money represented by the balance due and unpaid, that the lienor defendants asserted conflicting claims to it growing out of their liens, that he was ready and willing to pay over the amount remaining unpaid by him to those entitled to receive it as determined by the court, and asking the court to so determine, first having ordered the several

parties in interest to interplead and state their respective claims.

At this stage the plaintiff's lien was, pursuant to the statute (§ 4139) and the method thereby prescribed, dissolved, and a bond for $3,500, conditioned upon the payment to the p aintiff or his assignees of such amount as a court of competent jurisdiction should adjudge to have been secured by the lien with interest and costs, substituted therefor. The defendants Moomjian and Kebabian were respectively the principal and surety on this bond. Following this substitution the plaintiff, as provided by statute, amended his complaint so that its allegations should conform to the changed situation, and by modifying its prayers for relief so that they contained a claim for $1,000 damages and for an adjudication as to the sum secured by the plaintiff's lien, and for a judgment against Moomjian and Kebabian, as principal and surety on the bond, for the amount so ascertained together with the interest thereon and costs. Kebabian was also added as a party defendant.

The defendant lienors thereupon answered, setting forth the bases of their respective claims and claiming to be entitled to an apportionment, as provided by statute, of any sum found due from Moomjian to Ruderman.

Moomjian's three payments, made subsequent to the service of the plaintiff's notice, were induced by Ruderman's refusal to proceed with the work unless he was paid as agreed, and were made in good faith.

By the judgment the defendant Moomjian was given an allowance of $200 for counsel fees to be retained by him out of the fund in his hands.

*Bernard E. Hoffman,* for the appellants (defendants).

*Charles Cohen,* with whom was *Barnett Berman,* for the appellee (plaintiff).

*Louis Sachs* and *Joseph I. Sachs*, with whom was *Harry W. Asher*, for the appellee (defendant Moomjian).

PRENTICE, C. J. Under the pleadings in this case the issues presented for determination and the contentions of counsel in argument relate: (1) to the apportionment, among the plaintiff and the four defendant lienors adjudged to have valid liens, of the fund of $1,050 in the defendant Moomjian's hands as the balance of the contract price unpaid to the contractor Ruderman, together with the interest thereon; (2) to the right of the defendant lienors to share with the plaintiff in the apportionment of a larger sum, to wit, one made up of the $1,050 with interest and $1,200, the total of the payments made by Moomjian to Ruderman subsequent to the receipt of the plaintiff's notice of intention to file a lien; (3) to the personal responsibility incurred by Moomjian by reason of these payments to Ruderman, and the extent of it; and (4) to the bearing of that responsibility, if any, upon any apportionment to be made. These issues divide the interested parties into three contending factions, to wit, the plaintiff, the four defendant lienors, and Moomjian, the property owner.

All parties apparently concede that the plaintiff is entitled to have his claim in some manner paid in full. Whether or not this concession is one which the law compels to be accepted as a starting point in the determination of the rights of the several claimants, we shall have occasion to inquire later on in connection with a consideration of the position which the plaintiff occupies. He at least asserts that such is the case, and that is the burden of the argument made in his behalf. As for other incidental questions touching the source or sources from which he is to obtain such pay-

ment, which were the main subjects of discussion before us, he expresses little concern.

The defendant lienors present two alternative contentions. The first is that what they are entitled to share in, is a pro rata division among all the lienors of the unpaid fund of $1,050 and interest thereon, plus the $1,200 paid by Moomjian following his receipt of the plaintiff's notice. The second is that the plaintiff, for the extinguishment of the indebtedness to him, should be relegated to his claim against the property-owner Moomjian growing out of the latter's payments, greater in amount than that indebtedness, which he made to Ruderman subsequent to his receipt of the plaintiff's notice, thereby leaving the $1,050 fund to be divided between them to the substantial satisfaction of their claims.

Moomjian, on the other hand, asserts that no apportionment of the $1,050 fund should be made which will leave any portion of the plaintiff's claim unsatisfied, and, therefore, that so much of that fund as may be necessary for the purpose be first apportioned to its satisfaction in full, and only the balance be shared by the other lienors.

The result of Moomjian's contention, as will readily be seen, is that he will escape with the payment of the contract price and no more, while the lienors, other than the plaintiff, will go substantially unpaid. The lienors' contentions, on the other hand, lead to an almost diametrically opposite result, in that they will be paid in full or substantially so, and Moomjian be required to make a second or double payment of the $1,200 or some considerable portion of it.

The trial court adopted the view that the plaintiff was entitled to payment in full, and in accordance with the contention of Moomjian's counsel ordered that the plaintiff take so much of the $1,050 fund as was

necessary to satisfy his claim with interest and costs, and that the other lienors share pro rata the infinitesimal balance.

Whatever equitable considerations may be urged in support of the apportionment thus made, the outstanding fact remains that such division of the fund formed by the unpaid balance of the contract price earned, is directly opposed to the plain and positive mandate of the statute. Section 4138 of the General Statutes, which deals with this subject, expressly provides that the unpaid price, in the event that it is insufficient to satisfy the claims of all subcontractor lienor claimants, shall be apportioned among them "in proportion to the amount of the debts due them respectively." This statutory direction has no limitation or exception, and is explicit in forbidding the recognition of any precedence among subcontractor lienors in so far as the division of the $1,050 in Moomjian's hands is concerned

What, then, should be done in the adjustment of the conflicting claims of the parties in order that our statutory regulations may be complied with? Whatever it be, some one or more must suffer loss, and the question is as to where that loss must fall. It is evident that the plaintiff and defendant lienors do not occupy the same position in all respects, although they are by statute placed upon an equality as regards the division of any unpaid balance. The plaintiff filed notice of his intention to claim a lien when only $1,000 had been paid by the owner and $2,250 of the contract price remained to become payable. When the defendants took like action, $2,200 had been paid the contractor, and only $1,050 remained to become payable. When the intervening $1,200 payments were made, the property owner owed the defendants no duty in respect to them. He was free to make them since they were not made in advance of the terms of the contract. Clearly they

Stone *v.* Moomjian.

have no right to look for the satisfaction of their claims beyond the unpaid balance in Moomjian's hands. It was not so with the plaintiff. He had filed his notice, and by that act had come into a position in which, as prospective lienor, Moomjian, by force of statute, owed him some duty and assumed some corresponding burden of responsibility and liability. What was that duty and burden?

The answer to this question depends upon the provisions of our statutes and the interpretation to be given to them. The defendant Moomjian contends that his duty, which he fulfilled, was to retain in his hands out of the moneys due the original contractor a sum equal in amount to the plaintiff's claim as, in the progress of the work, it should prove to be. This might well be if our law gave to the plaintiff, as the subcontractor who first served his notice of intention duly followed by the filing of his certificate of lien, or the one who had first filed his certificate of lien, or the first to take both steps, a priority of lien of such a nature that he would be entitled to have his claim first satisfied out of any unpaid balance in Moomjian's hands. But such is not the provision of our law. A subcontractor lienor, who serves his notice of intention to file a lien, does not, by reason of the promptness of his action, acquire any right or inchoate right of precedence over one taking a similar step later, save as intervening payments may be concerned. Neither does one, by filing a certificate of lien, thereby come into a position superior in any respect to that which others, who may follow his example, will come to occupy. The consequence in neither case is to cause any sum already due or to become due to the original contractor to be set aside as security through the resulting lien for the payment of the lienor's particular claim and that alone. No way to accomplish that result is provided.

Whatever lack of clarity and definiteness or other shortcoming there may be in our mechanic's lien statutes, one thing stands out in them clearly and unmistakably, and that is that subcontractor lienors stand upon a perfectly equal footing as respects their rights in the unpaid earned contract price. No one of them can acquire a security which he may not be called upon to share with others, and neither he nor the owner nor any man can, until sixty days after the completion of the work, tell what retained sum would be necessary to afford protection to a notifying subcontractor. This is a fact of large importance in the determination of the rights and obligations which our statutes create and impose. In the present connection it has importance in that it interposes an impassable barrier to the defendant Moomjian's contention, that his duty created by the receipt of the plaintiff's notice was fully performed since it appears that he has retained a greater sum than the amount for which the plaintiff has a lien, although, under the law, he is able to obtain only some portion insufficient to satisfy his claim. The security which a notifying subcontractor obtains is not such an evanescent thing as it would be were this claim, presented on behalf of Moomjian, well made.

There are two provisions of our statute which, when read together, indicate clearly the measure of the duty for the protection of the plaintiff, under which Moomjian came upon his receipt of the plaintiff's notice, when only $1,000 had been paid to Ruderman, and his responsibility for any breach of that duty. One is that which we have just been considering; the other that which accords to notifying lienors certain rights not given to prospective lienors whose notices as yet remain unserved. This latter provision is that "in determining the amount to which any lien or liens shall

attach upon any land or building, the owner of such land or building shall be allowed whatever payments he shall have made, in good faith, to the original contractor or contractors, before receiving notice of such lien or liens." General Statutes, § 4138. Here is no express prohibition of additional payments. What is forbidden is an allowance to the owner on account of them if the subcontractor lienors who have served their notices are to suffer thereby. By the service of his notice a prospective subcontractor lienor who thereafter duly files his certificate of lien, acquires the right to find in the property owner's hands such an amount, within the limits of what is due to the original contractor at the time of the service or what shall thereafter become due, as will suffice in its division and distribution pursuant to statute to satisfy his claim as it shall prove to be. The owner may make such payments as he chooses, but in making them he acts at his peril. The risk he runs is that of holding the notifying lienors harmless by reason of them. They and all other lienors are entitled to share in the final sum unpaid. If their claims are thus satisfied all is well, and the owner is protected. If not, he must, to the extent of his payments, make good the loss the notifying lienors have been compelled to suffer by reason of the depletion of the fund which should be available for their additional security. His overpayment is measured, not by his actual payments but by the amount of them which is required to furnish the notifying lienors the security to which they are entitled by virtue of their notices. As regards a subcontractor lienor who has given no notice until after a payment is made, the owner is, as we have already observed, free to make it, and to make it without entailing any responsibility therefor even indirectly. His sole duty is to those who have given notice, and his responsibility for non-

performance of that duty is to save them from loss for his mistaken or indiscreet action.

The observations already made effectually dispose of both of the claims of the defendant lienors. They dispose of their primary claim that the defendant lienors are entitled to share with the plaintiff in a pro rata division of not only the $1,050 and interest thereon but also the additional sum of $1,200, since they establish that the payments, which make up the latter amount, were not made by Moomjian in contravention of any duty he owed to them. As a consequence they are in no position to ask that he make repayments in whose division they may share, or that they be permitted to share in any repayments made by him. The only person who has any right to complain of Moomjian's payments is the plaintiff, and he, therefore, is the only party who is entitled to claim protection therefrom through their being treated as though they had not been made.

They also dispose of the secondary claim that the plaintiff, following the method of marshalling securities in equity where one creditor has a claim upon two funds of a debtor to either of which he may resort while other creditors of the same debtor may look to only one, should be required to resort for the satisfaction of his indebtedness to his claim against Moomjian, thereby leaving the $1,050 fund to be apportioned among them. He has no claim against Moomjian beyond that he be saved from any loss which might befall him by reason of the payments after notice. Consequently he has no right to look to that portion of Moomjian's indebtedness to Ruderman, which, as between them, was liquidated by the last three payments, as furnishing security for any greater sum than that required to make him whole.

Beyond that the situation is not one to which the

equitable principles of marshalling securities are applicable. "As a general rule . . . before a court of equity will marshal securities between two persons, it must appear (1) that they are creditors of the same debtor, (2) that there are two funds belonging to that debtor, and (3) that one of them alone has the right to resort to both funds." *Quinnipiac Brewing Co.* v. *Fitzgibbons,* 73 Conn. 191, 196, 47 Atl. 128. Neither the plaintiff nor the defendant lienors are in any true sense creditors of Moomjian, nor is he their debtor. There is no contract relation between them. The fund to which they may look is money earned by Ruderman and primarily his. They are his creditors entitled by statute, in effect, to appropriate his money in Moomjian's hands for the satisfaction of their claims.

These conclusions lead to the result that the Superior Court should have ordered the fund in the defendant Moomjian's hands, comprising the unpaid balance due to Ruderman, to be divided pro rata between the several lienors, to wit, the plaintiff and the four defendants found to have valid liens, and should have rendered judgment in favor of the plaintiff against the defendants Moomjian and Kebabian for the recovery of the balance of the plaintiff's claim, principal and interest, remaining unsatisfied after such division.

The allowance to Moomjian for counsel fees was also erroneous. It was doubtless made upon the theory that the case, at least as it was decided, was essentially one of interpleader where the controversy concerned the division of the fund in Moomjian's hands to which he made no claim and which he was ready and willing to pay over to the parties entitled to receive it. The issues and the contested issues were much wider in their range, and directly involved Moomjian's personal interests and responsibility and the extent of the latter. The amount of the fund in question was left

to adjudication, Moomjian himself presenting claims for deductions which called for such adjudication. They involved, moreover, a determination of Moomjian's personal liability arising from his payments subsequent to the receipt of the plaintiff's notice. He was distinctly a litigating party having personal interests involved in the result, as the outcome clearly demonstrates.

There is error, the judgment is set aside and the cause remanded for the rendition of a judgment directing that the unpaid balance found due from the defendant Moomjian to Ruderman, principal and interest, be apportioned pro rata between the several lienors, to wit, the plaintiff, Stone, and the defendants Bernstein, Rappaport, the Connecticut Adamant Plaster Company, and Setlow and Finkelstein, and awarding to the plaintiff, as against the defendants Moomjian and Kebabian, a judgment for the recovery of the balance of the plaintiff's claim, principal and interest, remaining unsatisfied after such apportionment.

In this opinion the other judges concurred.