THE NEW HAVEN ORPHAN ASYLUM *vs.* THE JAMES A. HAGGERTY COMPANY ET ALS.

Third Judicial District, Bridgeport, April Term, 1928.

MALTBIE, HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 10th—decided July 18th, 1928.

*William L. Beers,* for the plaintiff.

*Manuel S. Sachs,* with whom, on the brief, were *Louis Sachs* and *Joseph I. Sachs,* for the appellant (defendant The Drazen Lumber Company).

*Henry Rabinowitz,* for· the appellant (defendant Hardwood Floors, Inc.).

*Charles T. McClure,* for the appellants (defendants The Connecticut Sash and Door Company and Mary E. Clark, executrix).

*David L. Daggett* and *Frank E. Callahan,* for the appellee (defendant The Connecticut Adamant Plaster Company).

HAINES, J.  The finding discloses that the plaintiff, owning land and buildings in the town of Hamden, made a contract with the Haggerty Company in October, 1923, for the construction of certain buildings and improvements thereon, and a second contract in February, 1924, for certain other work on the same property.

The work was fully performed by the Haggerty Company.  The defendants Richard W. Desmond, The DeForest & Hotchkiss Company, The F. L. McDermott Iron Works, Inc., Hardwood Floors, Inc., The Connecticut Sash & Door Company, The Drazen Lumber Company, Horace E. Clark, Cairns & Funkie, Inc., and The Connecticut Adamant Plaster Company were subcontractors engaged by the Haggerty Company, and each rendered services and furnished materials pursuant to the plaintiff's contracts with the Haggerty Company; but none of these subcontracts were in writing, nor were any of them assented to in writing by the plaintiff.

Upon the completion of the work a substantial balance of the contract price was due from the plaintiff, but the latter refused to pay because of conflicting claims by subcontractors and general creditors of the Haggerty Company, and brought this action in the

nature of interpleader to determine the rights of all parties. The plaintiff waived certain claims it had first made against the Haggerty Company and for counsel fees and disbursements and agreed that the net sum due and in its hands was $20,768.70. The defendant John A. Condon was a general creditor of the Haggerty Company and served process of garnishment on this fund in the hands of the plaintiff and the same course was taken by two of the above-named subcontractors, The Adamant Plaster Company and Hardwood Floors, Inc.

At the opening of the hearing, defaults were entered against certain defendants, some by agreement and some for nonappearance, and disclaimers were filed by certain others. All the remaining parties consenting thereto in writing, the court entered an interlocutory judgment that the above-named sum be paid into court and held by the clerk subject to the final judgment of the court, and that the plaintiff and its property be freed of all claims theretofore made by the parties. It does not appear of record that a formal judgment of interpleader was entered, but the claims of the parties were made by answer and cross-complaint and were fully heard.

The fund being insufficient to pay all claimants in full, the main question presented to the court was that of priorities. The trial court adopted the views of the garnisheeing creditors, that the rights of the subcontractors dated from the time they gave notice of intention to claim their liens, and gave judgment for payment in full to the following claimants: To Cairns & Funkie, Inc., whose notice was given September 16th, 1925, $3,616; to John A. Condon, who served garnishee process October 3d, 1925, $1,698.61; to Richard W. Desmond, whose notice was given October 16th, 1925, $3,234.64; to DeForest & Hotchkiss Company, whose

notice was given October 23d, 1925, $751.89; to F. L. McDermott, Inc., whose notice was given October 23d, 1925, $2,841.53; to Adamant Plaster Company, which served garnishee process October 23d, 1925, $7,365.83; dividing the balance of the fund pro rata between five subcontractors whose notices were given subsequent to October 23d, 1925, the date of the Plaster Company's garnishment, viz.: Hardwood Floors, Inc., Connecticut Sash & Door Company, Drazen Lumber Company, John E. Bassett Company and Horace E. Clark. From this judgment the last-named subcontractors, with the exception of the Bassett Company, took separate appeals, but on identical grounds.

The appellants are contending for priority over the garnisheeing creditors and equality with the other subcontractor lienors, on the ground that their right to the fund dates from the time their service began. This precise question has not heretofore been presented to this court. Where it has been passed upon in other jurisdictions there is a sharp conflict of opinion, not only or solely because of differing statutory provisions, but of differing views of the spirit and purpose of mechanics' lien laws in general.

That portion of our own law in which we are to seek the solution of the present question is contained in General Statutes, Rev. 1918, §§5217 to 5220, inclusive.*

---

* Sec. 5217. *Mechanic's lien on buildings and land. Precedence.* If any person shall have a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building, or any of its appurtenances, and such claim shall be by virtue of an agreement with or by consent of the owner of the land upon which such building is erected or has been moved, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building with the land on which it stands shall be subject to the payment of such claim. Such claim shall be a lien on such land, building and appurtenances, and shall take precedence of any other incumbrance originating after the commencement of such services,

One of the purposes of this legislation is to give to building creditors certain peculiar and different rights

or the furnishing of any such materials, subject to apportionment as provided in section 5220, but in case of removal no such lien shall take precedence of any incumbrance upon the land to which the building is removed which accrues before the building has been actually moved upon the land. Said premises may be foreclosed by the owner of such claim in the same manner as if held by mortgage.

Sec. 5218. *Certificate of lien to be recorded.* No such lien shall be valid, unless the person performing such services or furnishing such materials, within sixty days after he has ceased so to do, shall lodge with the town clerk of the town in which said building is situated a certificate in writing, describing the premises, the amount claimed as a lien thereon, and the date of the commencement of the performance of services or furnishing of materials, stating that the amount claimed is justly due, as nearly as the same can be ascertained, and subscribed and sworn to by the claimant; which certificate shall be recorded by the town clerk with deeds of land; but in case a party who might have filed such a certificate dies before filing the same, his executor or administrator may make and lodge such a certificate within three months from the time of qualification of such executor or administrator; *provided,* such certificate must be lodged within six months from the decease of the original claimant.

Sec. 5219. *Notice of intent. Liens of subcontractors and material men.* No person other than the original contractor for the construction, raising, removal or repairing of the building, or a subcontractor, whose contract with such original contractor is in writing, and has been assented to in writing by the other party to such original contract, shall be entitled to claim any such lien, unless he shall, after commencing, and not later than sixty days after ceasing, to furnish materials or render services for such construction, raising, removal or repairing, give written notice to the owner of such building that he has furnished or commenced to furnish materials, or rendered or commenced to render services, and intends to claim a lien therefor on said building; which shall be served upon said owner, if he resides in the same town in which said building is being erected, raised, removed or repaired, by any indifferent person, by leaving with him or at his usual place of abode a true and attested copy thereof; and if said owner does not reside in said town, but has a known agent therein, such notice may be so served upon said agent, otherwise it may be served by any indifferent person, by mailing a true and attested copy of said

from those enjoyed by general creditors. *Chapin* v.
*Persse & Brooks Paper Works,* 30 Conn. 461, 474;
*National Fireproofing Co.* v. *Huntington,* 81 Conn. 632,
634, 71 Atl. 911.

"The design of the statute was to give to one who, by
furnishing services or materials, under a contract with
the owner of land, has added to its value by construct-
ing a building upon it, . . . a substantial security for

notice to such owner at the place where he resides; and when there
shall be two or more owners, such notice to one of them shall be
notice to all; and said notice with the return of the person who
served it indorsed thereon shall be returned to the original maker
thereof within said period of sixty days. No subcontractor, with-
out a written contract complying with the provisions of this section,
and no person who furnishes material or renders services by virtue
of a contract with the original contractor or with any subcontractor,
shall be required to obtain an agreement with, or the consent of, the
owner of the land, as provided in section 5217, to enable him to
claim a lien under this section.

Sec. 5220. *Liens limited; apportionment; payments to original
contractor.* No such lien shall attach to any building or its ap-
purtenances, or to the land on which the same may stand, in favor
of any person, to a greater amount in the whole than the price which
the owner agreed to pay for such building and its appurtenances;
and when there shall be several claimants, and the amount of their
united claims shall exceed such price, the claimants, other than the
original contractor, shall be first paid in full, if the amount of such
price is sufficient for that purpose; but if not, it shall be appor-
tioned among the claimants having such liens, other than the
original contractor, in proportion to the amount of the debts due
them respectively; and the court having jurisdiction thereof, on
application of any person interested, may direct the manner in
which such claims shall be paid; but in determining the amount
to which any lien or liens shall attach upon any land or building,
the owner of such land or building shall be allowed whatever pay-
ments he shall have made, in good faith, to the original con-
tractor or contractors, before receiving notice of such lien or liens.
No payments made in advance of the time stipulated in the original
contract shall be considered as made in good faith, unless notice of
intention to make such payment shall have been given in writing
to each person known to have furnished materials or rendered
services at least five days before such payment is made.

his proper remuneration. . . . To carry out this intent, it is necessary to give the statute such a construction, if its terms are doubtful, as may serve to make mechanics' liens of some value." *Balch* v. *Chaffee,* 73 Conn. 318, 320, 47 Atl. 327. "The mischief to be prevented was loss to those furnishing services or materials in the construction of a building, if unable to collect what might be due them on such account from the owner of the real estate." *National Fireproofing Co.* v. *Huntington,* 81 Conn. 632, 634, 71 Atl. 911. In determining the legislative intent we may not wholly rely upon the literal meaning of particular provisions, but must proceed upon the assumption that the law was intended to be read as a whole with each provision in harmony with every other. *Hartford Builders Finish Co.* v. *Anderson,* 99 Conn. 343, 352, 122 Atl. 76.

"The mechanic's lien law is a creature of statute, and this statute is to be construed so as to reasonably and fairly carry out its remedial intent. It is not to be construed with unreasonable strictness." *Parsons* v. *Keeney,* 98 Conn. 745, 748, 120 Atl. 505; *Cronan* v. *Corbett,* 78 Conn. 475, 478, 62 Atl. 662; *Brabazon* v. *Allen,* 41 Conn. 361, 362.

A mechanic's lien law was first enacted in this State in 1836. It only secured the original contractors having claims of over $200 and applied only to buildings in cities. Public Acts of 1836, Chap. 76. Three years later, by amendment, subcontractors were given the lien if their claims were $50 or more and if they had an agreement in writing with the contractor assented to in writing by the owner of the property. Public Acts of 1839, Chap. 29.

In the succeeding sixteen years, by amendments, it was provided the mechanic's claim need only exceed $25; that any person having such a claim for services or materials should have a lien, but all save the main

contractor or a subcontractor whose contract with the main contractor was in writing and assented to in writing by the other party to the contract, must notify the owner within sixty days from the beginning of his service, of that fact and that he intended to claim the lien. Public Acts of 1855, Chap. 76.

Thereafter for twenty years the law remained practically without change, and then it was provided that the claim must be "by virtue of an agreement with or by consent of" the owner or his agent. Public Acts of 1875, Chap. 15. Four years later it was provided that it should not be necessary for any subcontractor to obtain an agreement with or consent of the owner for furnishing labor or material in order to claim a lien. Public Acts of 1879, Chap. 43.

By later amendments, in 1899 and 1901, this provision regarding subcontractors was made to read substantially as it appears in the closing sentence of our present §5219: "No subcontractor, without a written contract complying with the provisions of this section, and no person who furnishes material or renders services by virtue of a contract with the original contractor or with any subcontractor, shall be required to obtain an agreement with, or consent of, the owner of the land, as provided in section 5217, to enable him to claim a lien under this section." Public Acts of 1899, Chap. 121; Public Acts of 1901, Chap. 80; General Statutes of 1902, §4137; General Statutes of 1918, §5219.

Under these conditions, it will be seen that our law gives liens to two classes of subcontractors: (1) those who have an agreement with the contractor in writing and have the assent of the owner in writing and thus act with his knowledge and (2) those whose claims are not based upon any agreement with the owner. Those in the first class need give no notice, while those in the

second class must do so within sixty days after their service has ceased. *Barlow Brothers Co.* v. *Gaffney,* 76 Conn. 107, 111, 55 Atl. 582.

By the finding it is clear that these appellant subcontractors come within the second of the above classes, and must have given the statutory notice in order to avail themselves of their liens. This was done, but the question remains—is the notice required in order to bring the lien into existence, or is it merely to inform the owner that it already exists so that he may protect himself in making payments under his contract?

In *Burritt Co.* v. *Negry,* 81 Conn. 502, 505, 71 Atl. 570, we said the notice was required to "preserve" the lien, and from this the implication is that the lien was already in existence, though inchoate, when the notice was given.

Moreover, it does appear from the language of §5220 that this notice is for the purpose of informing the owner of the existence of the lien so that payments to the main contractor may be withheld for the protection of the owner and the preservation of the lien of the subcontractor, for if the owner has not received the notice he may make payment in good faith to the main contractor to the possible detriment of the subcontractor's claim, and if he has received the notice he can retain the necessary amount to protect himself. The notice is a warning to the owner that he may protect himself. Where a lien was filed first and the notice later, but both within the statutory period, it was held that the lien was good. *Shattuck* v. *Beardsley,* 46 Conn. 386.

Turning now from these historical features and decisions of this court to the statutory provisions themselves: Section 5217 gives a mechanic's lien to *"any person"* who has a claim for more than $10 for services

or materials if rendered by agreement with or consent of the owner or of some person having authority to procure such service or material for the owner. Such claim shall be a lien on the owner's property and shall take precedence of any other incumbrance originating after the "commencement of such services, or the furnishing of any such materials. . . . Said premises may be foreclosed by the owner of such claim, in the same manner as if held by a mortgage."

The provisions of this statute give a general statement of the purpose and effect of our law governing a mechanic's lien: (1) The claim must be more than $10, (2) it must be for materials or services rendered in the construction, raising, removal or repairs of a building or its appurtenances, (3) the building and the land on which it stands shall be subject to the payment of the claim, (4) such claim shall be a lien thereon, (5) this lien shall take precedence of any other incumbrance originating after the commencement of such services or the furnishing of any such materials, (6) under conditions stated in §5220 the lien is subject to apportionment, and lastly (7) the holder of the lien may foreclose the premises as if he held a mortgage. One whose claim arises by agreement with or consent of the owner or of some one who has authority to act for him thus acquires a lien by virtue of this statute; but it will be seen that nothing is said directly as to any other class of mechanics. These latter may obtain the lien, but only under conditions imposed by succeeding sections of the statutes.

Section 5218 contains further provisions which apply to all mechanic's liens and it makes that application clear by referring to "such liens"—which can mean nothing other than the liens which have been described in the preceding section 5217. Its terms govern all mechanic's liens under the law.

Passing to §5219, we find special provisions by which another class of mechanics—subcontractors without an agreement with the contractor and the written assent of the owner—may obtain the benefit of the mechanic's lien. It is to be noted that while this treats of a different class of claimants, it does not prescribe any different kind of a lien. On the contrary, his compliance with the conditions of this section enables the subcontractor to claim "such lien," i.e., the lien described in the two preceding sections—5217 and 5218. It is obviously for this reason that this section makes no reference to the nature, scope or effect of his lien. To determine these features, reference must be made to the two preceding sections.

In §5220, the opening provision clearly applies to all mechanic's liens by whomsoever held, and provides that they shall not exceed the total which the owner was to pay under his contract. It then explicitly provides that the contractor's own lien shall be subordinated to those of subcontractors, entitling them to payment before him, and if the available fund does not pay the subcontractor liens in full, the fund must be apportioned between them.

These appellant subcontractors, having complied with the conditions of §5219, have obtained the liens whose scope and effect are set forth in §§5217, 5218 and 5220.

It is clear that all these provisions of our law are harmonious. The compliance with the conditions of §5219 gives the appellants a lien with all the characteristics of the main contractor's lien, save only that it is entitled to priority of payment over his lien, and may be subjected to an apportionment among fellow subcontractors in case all cannot be paid in full.

We fail to find in our statutes or decisions anything which conflicts with this conclusion and we think the

purpose and intent of our law is clearly in accord with it.

It follows that the spirit and purpose of the law require that the provisions, among others, in §5217 giving mechanic's liens precedence over incumbrances originating after the commencement of services should be applied to all mechanic's liens, including the liens of these appellant subcontractors, the same, e. g., as the provision for foreclosure; for no one of these provisions is in any way limited in its application.

Under this interpretation, the appellant's claims date from the time their services began, and as all began before the garnishment took place, they necessarily have priority over the latter.

It will also be apparent that a judgment rendered upon this interpretation of our law will conform in detail to the specific requirements of our statutes.

The judgment of the trial court fails to accomplish this result in several particulars. It permits the payment of the main contractor's personal debts out of the fund before the subcontractors are paid, and thus denies them the preference over him which the statute specifically gives them.

It is further explicitly provided by our statutes that there shall be no distinction, by priority or otherwise, between subcontractor lienors, but each shall have his proportionate share of the fund, and if they cannot be thus paid in full the contractor can have none of it.

"A subcontractor lienor, who serves his notice of intention to file a lien, does not, by reason of the promptness of his action, acquire any right or inchoate right of precedence over one taking a similar step later, save as intervening payments may be concerned. Neither does one, by filing a certificate of lien, thereby come into a position superior in any respect to that which others, who may follow his example, will come to

occupy. The consequence in neither case is to cause any sum already due or to become due to the original contractor to be set aside as security through the resulting lien for the payment of the lienor's particular claim and that alone. No way to accomplish that result is provided. Whatever lack of clarity and definiteness or other shortcoming there may be in our mechanic's lien statutes, one thing stands out in them clearly and unmistakably, and that is that subcontractor lienors stand upon a perfectly equal footing as respects their rights in the unpaid earned contract price. No one of them can acquire a security which he may not be called upon to share with others, and neither he nor the owner nor any man can, until sixty days after the completion of the work, tell what retained sum would be necessary to afford protection to a notifying subcontractor. This is a fact of large importance in the determination of the rights and obligations which our statutes create and impose." *Stone* v. *Moomjian,* 92 Conn. 476, 483, 484, 103 Atl. 635.

The judgment in question directly conflicts with this view by awarding certain subcontractors whose notices were served earlier than those of other subcontractors, a priority right, resulting in payment of their liens in full, while others are, some of them, paid in part only, and some, by reason of a later filing of their notices, receive little or nothing at all.

Besides giving the general creditors of the contractor a right superior to his own, the judgment in question permits the turning over of a large portion of the fund to those who had no part whatever in its creation, and does this at the expense of those whose services and materials have really brought the fund into existence, and denies to these subcontractor lienors that protection which is one of the primary objects of our law.

While authorities are cited in support of the trial

court's conclusion, it will be seen that they are statements from textbooks dealing with mechanics and other liens in general or courts of other jurisdictions whose mechanics' lien statutes are different in many respects from our own. They should not and cannot control specific provisions of our own peculiar statutes or their obvious and clear purposes. "Very little in the way of uniform doctrine can be derived from the construction which has been placed upon statutes of the different States relating to mechanics' liens, by reason of the diversity of the terms employed." *Hartford Builders Finish Co.* v. *Anderson,* 99 Conn. 343, 345, 122 Atl. 76.

There is error; the judgment is set aside and the cause remanded to the Superior Court for the entry of a judgment in accordance with this opinion.

In this opinion the other judges concurred.