J. L. PURCELL, INC. *vs.* F. GREY LIBBEY ET AL.

First Judicial District, Hartford, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued October 2d, 1929—decided March 6th, 1930.

*Reuben Taylor,* for the appellants (defendants).

*Allan K. Smith,* for the appellee (plaintiff).

WHEELER, C. J.   The plaintiff brings its action upon a bond given in substitution for a mechanic's lien. Wheeler and Mahoney, copartners and contractors, entered into a written contract November 20th, 1924, with the defendant Libbey to do the plumbing work, which included the furnishing of material and labor, in a building upon land owned by him.   The plaintiff, as subcontractor under an oral agreement with these contractors, furnished them with material as the same was required on this job to the amount of $2127.61,

making the first delivery December 22d, 1924, and the last on May 15th, 1925.

The contractors fully performed their contracts with Libbey and furnished extras in addition amounting to $997.60, but he has not paid any money to them under their contract and made no payment under it other than the book credits to which we refer hereafter.

On July 14th, 1925, within sixty days after furnishing such materials, the plaintiff gave the defendant Libbey due notice of its intention to claim a lien and on the same day duly filed a certificate of mechanic's lien for this material. By order of the Superior Court on September 29th, 1925, the defendants, Libbey as principal and Patience as surety, duly gave to plaintiff their bond for $2500 in substitution for the mechanic's lien conditioned upon their paying "such amount as a court of competent jurisdiction may adjudge to be secured by said lien with interest and costs."

Defendants' reasons of appeal one and two must be denied because they do not conform with § 11 of the Rules. Practice Book p. 309. Repeated decisions of this court should have made the practice as to the form of reasons of appeal which call for corrections of the finding clear to the profession. Had these reasons been in proper form the most casual examination of the excerpts from the evidence would have indicated that the material findings, whose corrections are sought, must have been determined upon a mere conflict of the evidence and that it could not be held that the reasoning mind could not have reasonably made upon this evidence the findings complained of.

The appellants' main reasons of appeal are: (a) That Wheeler and Mahoney, the contractors, at the time plaintiff gave its notice of intention to file a

mechanic's lien and filed its lien, had been paid all that was due them from Libbey and had waived their right to exact further compensation from him under their contract and divested themselves of any inchoate right of lien or any right to claim a lien. (b) That the mode of payment in the contract was inconsistent with a lien by the contractors. (c) That the plaintiff subcontractor had no independent right of lien, but that his right existed by way of subrogation to Wheeler and Mahoney's right, and when payment was made under their contract, or they had waived their right to a lien, or been divested of it, their right to a lien was gone and the right of the subcontractor to a lien ended with the ending of the contractor's right.

The defendant's answer admitted a part of the complaint but denied that the plaintiff subcontractor furnished materials, beginning December 22d, 1924, and ceasing so to do May 15th, 1925, in the construction of a building on land of the defendant, under an agreement with Wheeler and Mahoney, who were general contractors, upon their agreement to pay for the same, and that on July 14th, 1925, the plaintiff gave notice in writing to defendants of its intention to claim a mechanic's lien on this property and on the same day and within sixty days after it ceased to furnish such material duly lodged a certificate in writing in Hartford in which town the property was situated.

The court found the issues for the plaintiff and rendered its judgment in accordance with that finding.

None of the reasons of appeal question the finding of these issues in favor of the plaintiff and none question that the judgment follows this finding with legal accuracy. This finding determines the appeal in favor of the plaintiff; notwithstanding this the case was tried and determined upon the legal issues which we have stated in (a), (b) and (c) above; the finding sets

forth the facts upon which these legal claims were made together with the claims of law made in the trial court and these constitute the principal reasons upon which this appeal is based and those which were argued before us and are presented in the briefs of counsel. Since their determination must lead to a like result we shall indicate our views upon these questions which are raised upon the appeal but not found in the pleadings.

"The mechanic's lien law is a creature of statute, and this statute is to be construed so as to reasonably and fairly carry out its remedial intent." *Parsons* v. *Keeney,* 98 Conn. 745, 748, 120 Atl. 505. We may not ascertain the construction of a single provision of this law nor the legislative intent by its words alone; we must take all of its provisions and read them as a whole, that each provision may be in harmony with every other and the remedial purposes of the law preserved. That purpose was to give to whoever furnishes material or services in excess of $10 in the construction, raising, removal or repairs of any building, either by virtue of an agreement with or by consent of the owner of the land in which the building stands, or of some person having authority from or acting for such owner in procuring such labor or materials, the security of the building and land for the payment of his claim by making such claim a lien thereon, which should have precedence of any incumbrance originating after the commencement of such services or the furnishing of such material, provided the claimant shall conform to the requirements of the statutory procedure. General Statutes, § 5217. The sections of the statute applicable to this appeal are quoted in a footnote in 108 Conn. 236 to 238, inclusive, to which reference may be made. The lien before us falls within the second of the classes to which our law gives

liens, and, if valid, is a statutory right, derived through the agreement of the subcontractor with the main contractor. *New Haven Orphan Asylum* v. *Haggerty Co.,* 108 Conn. 232, 240, 142 Atl. 847. The subcontractor's right to a lien exists primarily through the statutory authority conferred by the owner upon the contractor to act for him. It is created because the subcontractor has furnished material or labor to or for the contractor which has gone into the owner's building. The subcontractor lienors stand "upon a perfectly equal footing as respects their rights in the unpaid earned contract price." *Stone* v. *Moomjian,* 92 Conn. 476, 484, 103 Atl. 635.

In the recent case, *New Haven Orphan Asylum* v. *Haggerty Co., supra,* at page 243, we say: "In § 5220, the opening provision clearly applies to all mechanics' liens by whomsoever held, and provides that they shall not exceed the total which the owner was to pay under his contract. It then explicitly provides that the contractor's own lien shall be subordinated to those of subcontractors, entitling them to payment before him, and if the available fund does not pay the subcontractor liens in full, the fund must be apportioned between them." The subcontractor's right to a lien, though inchoate comes into existence when he begins furnishing materials (*Burritt Co.* v. *Negry,* 81 Conn. 502, 505, 71 Atl. 570), and becomes perfected when he files his lien having complied with all statutory requirements. These rights which are given the subcontractor cannot be taken from him or abridged by act of the contractor or the owner.

Section 5220 of the General Statutes concludes as follows: "but in determining the amount to which any lien or liens shall attach upon any land or building, the owner of such land or building shall be allowed whatever payments he shall have made, in good

faith, to the original contractor or contractors, before receiving notice of such lien or liens. No payments made in advance of the time stipulated in the original contract shall be considered as made in good faith, unless notice of intention to make such payment shall have been given in writing to each person known to have furnished materials or rendered services at least five days before such payment is made."

We construe this provision in *Burritt Co.* v. *Negry, supra,* at page 507, in these words: "The provision in question [now § 5220], by providing that no payment made in advance of the time stipulated shall be considered as made in good faith, unless notice of intention to make it shall have been given to each person known to have furnished materials or rendered services at least five days before such payment is made, is therefore of material benefit to the subcontractor. If by inadvertence or design he has delayed giving early notice of his lien, notice of the intended payment will enable him to protect himself against it by at once serving notice of the lien. On the other hand, if such notice of lien is not served within five days after notice of the intended payment has been given, the owner may proceed with the contemplated payment in safety, if made in good faith. Under the former law he could make no payments after notice of an intended lien had been served upon him; but before such notice was served he could make payments both at, and in advance of, the stipulated time, if made in good faith. Under the present law he is, as before, allowed all payments made when due and in good faith before notice, but he is not allowed for payments made when not due, although made before notice of a lien, unless he first gives five days' notice of the intended payment to those persons whom he knows have furnished materials and labor. Under the law before amendment,

notice of the intended lien prevented any payment; under the amended law knowledge of the furnishing of materials and labor prevents the making of any payment which is not due, unless five days' notice of such intended payment is given."

Again, in *Hubbell, Hall & Randall Co.* v. *Pentecost,* 89 Conn. 262, 267, 93 Atl. 672, we say: "In this State subcontractors stand no better than the general contractor as regards the validity and amount of their liens, and the effect of § 4138 [now § 5220] is simply that the subcontractors are entitled to treat payments not within the statutory definition of good faith as if they had not been made at all."

The statute is explicit, only payments made by the contractor to the owner in good faith before receiving notice of the lien shall be allowed. What constitutes a payment in good faith the statute leaves to judicial determination. It particularizes as to one form of payments—advance payments—and imposes upon the owner the duty of giving notice of his intention to make such payments to all known subcontractors five days before such payments are made. The specification, by implication, of one form of payment, which shall not be considered as made in good faith, was not intended as a limitation to this single form. In whatever garb bad faith in the making of the payments may present itself, they will not affect the lien or right of lien of the subcontractor, even though made prior to notice of the lien. Under this statute the right of the subcontractor under his lien cannot be prejudiced through payments made by an owner to his contractor prior to notice of the lien unless made in good faith.

The finding reveals two distinct instances of the bad faith of the defendant owner in making payments to these contractors. When the owner entered into this

contract he did not believe the contractors were in good financial standing and he caused to be inserted in the contract, "The amount of this contract is to be credited to the account of the contractors," for the purpose of reducing the indebtedness of the contractors to him. He at this time knew and intended that no money would be available on the contract to pay the subcontractors of the contractor. Before the work was completed and the contract price due, without notice to the plaintiff he caused a credit of $5000 to be entered on his books to the account of the contractors, thus reducing the prior existing indebtedness of the contractors by that amount. Subsequently he caused to be similarly credited on his books $2662.60 upon the account against the contractors; on the same day he issued a check for this sum payable to the contractors and required them upon its delivery to them to simultaneously endorse it to, and redeliver it to, him. In neither instance did the owner pay the contractors anything under their contract. The giving of the check was a plain subterfuge to cover up the real transaction.

The agreement between the owner and the contractors was designed to prevent the subcontractors getting any pay for materials and labor supplied by them to the contractors to put into the owner's building, which would and did enrich the owner. This was a very clear case of bad faith by the owner toward these subcontractors.

The second of these instances of bad faith occurred after the contractor had given the plaintiff subcontractor a contract for materials. The plaintiff knew that the contractors were not in good financial standing and withheld delivery of the material. The owner requested the plaintiff to deliver the material; he then inquired of the owner if he would make payments to

the contractors by giving book credits to them and the defendant replied that he would not, thereby concealing from the plaintiff the provision in the contract to which we have referred. The first delivery was made by the plaintiff December 22d, 1924; the first payment by such credit was not made until February 28th, 1925. A finding such as this is equivalent to a finding of fraud on the part of the owner, for the facts found can lead to no other conclusion. The trial court so concluded and also concluded that plaintiff was induced by the fraudulent representations and concealment to furnish the material he filed his lien for. The facts found support both conclusions.

Whether payments made by an owner pursuant to such a provision in a contract between owner and contractor, which covered the entire consideration of the contract and was unknown to a subcontractor, would, as to him, constitute payments not in good faith, we do not consider.

There is no error.

In this opinion the other judges concurred.