ERASTUS SPAULDING *vs.* THOMPSON ECCLESIASTICAL SOCIETY.

The act of 1855 with regard to mechanics' liens on buildings, provides that every building for the construction or repair of which any person shall have furnished materials or rendered services exceeding twenty-five dollars in amount, shall, with the land on which the same stands, be subject to the payment of the claim for such services and materials ; such liens not to exceed in the whole the amount to be paid by the proprietor to the original contractor. Held, that a party who had been employed by a contractor to do certain work on a building, which was not called for by the contract and to which the proprietor had objected, but which was done by the party with no knowledge of such objection or of the terms of the contract, had no lien on the building for the work so done.

Held also, that where, by the contract, a proprietor was to pay a certain sum of money to the contractor after the building should be completed, and he paid it in good faith before the completion, leaving nothing more to be paid

Spaulding *v.* Thompson Ecclesiastical Society.

to the contractor, he could not be compelled to pay any part of it again for work or materials procured by the contractor after such payment.

BILL for a foreclosure upon a mechanics' lien.

The petitioner, under a contract with certain builders named Stratton & Bishop, had tinned the spire of a church built by them, and had filed a certificate under the provisions of the statute of 1855 with regard to mechanics' liens, claiming a lien for his work on the church, the claim exceeding $25.* The church was built by Stratton & Bishop under a written contract dated Dec. 4, 1854, with William H. Mason and others, acting as a committee for certain persons associated for the purpose of erecting the church. By the contract, Stratton & Bishop were to furnish all the materials and do all the work, and to complete the church before the first day of November, 1855. The materials were to be of the best quality and the work done in a substantial and workmanlike manner. The committee were to pay them for the whole job $11,475—$6,000 as the work progressed, and $5,475 upon its completion and acceptance. On the first day of January, 1856, the work was not entirely completed, but the committee had paid, not only the $6,000, but in fact the remaining $5,475, although the accounts between the parties had not then been settled, and they were not aware that the whole amount had been paid. At this time the steeple was found to be defective, and Stratton & Bishop proposed, as a remedy for the defect, to cover it with tin. The committee refused their assent to this mode of remedy-

---

* The statute of 1855 provides that every dwelling-house or other building for the construction, erection or repairs of which any person shall have furnished materials or rendered services exceeding the sum of twenty-five dollars, shall, with the land on which the same may stand, be subject to the payment of the claim for such materials or services; such lien or liens not to exceed in the whole the amount agreed to be paid for the erection of the building by the proprietor; with a provision as to the filing of a certificate by the person claiming the lien, within sixty days after he has ceased to furnish the materials or render the services, and as to the giving of notice of the claim of lien, in the case of all parties except the original contractor, to the proprietor of the building, within sixty days after the commencement of the furnishing such materials or rendering such services.

ing the defect, and notified them that they should not accept the work, after the tinning, as complying with the contract. Stratton & Bishop, however, soon after procured the petitioner to tin the steeple, which he did, with no knowledge of what had transpired between them and the committee on the subject, or that it was not consented to by the committee. The committee knew of the fact of the petitioner doing the work, but did not know that it was done on credit until after it was done, and until the petitioner gave them a formal notice of his lien. The contract of Stratton & Bishop with the committee contained no provision for tinning the steeple or for any of the work done by the petitioner. Soon after the work was done by the petitioner Stratton & Bishop failed, not having completed the church, and the committee took possession of it and completed it, and afterwards the church and the land on which it stands were conveyed to the Thompson Ecclesiastical Society, the present respondents.

On these facts the case was reserved for the advice of this court.

*Carpenter* for the petitioner.

1. It is no objection to the validity of the act of 1855, in its application to the present case, that it was enacted after the contract of Stratton & Bishop with the committee was made, as we do not claim that it can affect that contract except as to the payments made after the passage of the act. It does not impair the obligation of that contract, but merely provides that the payments to be made under it may be diverted from the original contractors, to those who contracted under them and whom they were bound to pay. It operates simply like a factorizing process, to make the money payable to the creditor of the contracting party, instead of the contracting party himself. *Presbyterian So. of Green's Farms* v. *Staples,* 23 Conn., 544.

2. The payments made after November 1st, 1855, should not prejudice the claim of the petitioner, as they were made in advance of the requirements of the contract. Had the proprietors retained the $5,475 until the completion of the

building, there would have been sufficient funds in their hands to have met the plaintiff's demand. They having *advanced* the money did so at their own risk, and the plaintiff should not suffer by it.

3. The fact that the committee objected to the work should not affect the petitioner, as it was not brought home to his knowledge. So also of the fact that this work was not provided for by the contract. This the petitioner did not know and could not be expected to know. And if the respondents would avail themselves of either of these facts they should have informed him at the time, especially since they knew that he was doing the work. And having since taken the church and availed themselves of the work done by the petitioner, they ought not now to be allowed to say that they objected to it or that it was not provided for by the contract.

*Graves* for the respondents.

1. The act of 1855, not having been enacted when the contract was made, does not furnish the law of the contract, and can have no application to the rights of the parties under it.

2. When the services of the petitioner were rendered, we had paid up the original contractors in full for the whole job. It is objected that by so doing we had paid in advance of the requirements of the contract. But what if we had? We had a perfect right to do so, as between ourselves and the original contractors, who at the time were the only parties interested. When the work was done by the petitioner we owed Stratton & Bishop nothing. If the petitioner desired to know what the fact was in this respect he should have inquired of us.

3. The work done by the petitioner was not only not called for by the contract, but was positively objected to by the committee. If therefore the contractors themselves had done the work, it would have been a purely voluntary thing on their part for which they could have had no lien; and the petitioner, who did the work for them, can stand no better than they would have done. If the committee had been

sued, either by the original contractors or by the petitioner, in an action at law for this work, there could have been no recovery against them; and there certainly can be no lien for a claim that is not in itself a legal debt. No conduct is found on the part of the committee which raises any equity in favor of the petitioner. The petitioner should have informed himself as to the facts, if he desired to know them.

HINMAN, J. The plaintiff by his bill seeks to foreclose a mechanics' lien, which he claims, on the ground of his having furnished materials and rendered services in the erection of the defendants' church edifice. It appears, however, that the work was not done at the request of the defendants, or even for their benefit. On the contrary, it was done against their express prohibition to the original contractors, and was also done after the contractors had been fully paid the contract price for the erection and completion of the whole church. Under such circumstances we can not think the plaintiff entitled, as against the defendants, to any lien upon their church. It is true, the language of the act of 1855, (Public Acts, 1855, p. 96,) is very broad, but it could not have been intended to create a lien against a party who has not contracted, either directly or indirectly, for the work, but, on the contrary, has expressly prohibited it. If such was the intention, it would be worthy of consideration whether it is competent for the legislature thus to interfere with the rights of property. The plaintiff was in no sense a sub-contractor for any portion of the work upon the defendants' church. A sub-contractor comes in under an original contractor. His claim should be for work for which such original contractor would have had a lien had he performed it. Here there is no pretense that this was work which came under the original contract. It was done, we are aware, to remedy defective work performed under the original contract; but having been done in a mode not approved of by the defendants, it should be shown, at least, that it was not contrary to the mode contemplated originally, to enable us to say that it was even a proper remedy for such defective

work. But assuming that it would have been proper for the contractors to have performed the work in the manner it was finally done by the plaintiff, still, the plaintiff is not entitled to a lien upon the building, because the contract price for the whole work was fully paid before this work was, any of it, done. It is said, however, that as the defendants paid for the work before it was finished, they are bound to pay for it again to the parties who actually performed it. Here the money was paid in good faith, the defendants, from the unsettled state of their accounts with the contractors, not even knowing but that there was still a balance due after their last payment. Suppose a contractor is pre-paid for his work. If done in good faith, can there be any lien in favor of any body after such payment? Or if, as was the case here, and we presume very often is the case, he is paid by installments as the work progresses; is the employer liable to pay the installments over again to sub-contractors whose claims arise after such payments? In such cases sub-contractors must rely on the security and responsibility of the parties employing them, and not upon a claim for a lien on the building they are erecting. Should it unfortunately happen that they lose what is due them for their services through the insolvency of their employers, there is less injustice in leaving them to bear the loss, than in compelling the owners of the buildings to pay for them twice. We therefore advise the superior court to dismiss the plaintiff's bill.

In this opinion the other judges concurred.

Bill to be dismissed.