## THE WATERBURY LUMBER AND COAL COMPANY *vs.* PATRICK T. COOGAN.

Third Judicial District, Bridgeport, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Under our statutes relating to mechanics' liens, a subcontractor's lien
was limited, prior to 1855, to " the amount due to the original con-
tractor." In that year an Act—still in force—provided that the
amount of such lien should not exceed "the price stipulated and
agreed to be paid for such building and its appurtenances by the
owner or proprietor." *Held* that this change in phraseology was not
intended to work any alteration in the law and did not enlarge the
equitable rights of the subcontractor.

In the present case the original contractor agreed to erect a house, fur-
nishing all the labor and material, for $4,100. The contract provided
that if he should neglect or refuse to go on with the work the owner
might do so and deduct the expense of completing the house from
the contract price. After expending $1,600 the contractor aban-
doned the undertaking, and the house was finished by the owner at
an additional expense of $2,500. Prior to receiving notice from the
subcontractor of his intention to claim a lien, the owner had in good
faith paid $1,000 to the original contractor. *Held* that "the price
which the owner agreed to pay " was not $4,100, but that sum less
the $2,500 which it had cost to complete the house; that the pay-
ment of $1,000 must be allowed the owner, and that the lien attached
for the difference only, or $600.

Chapter 121 of the Public Acts of 1899 provides that the notice of an in-
tention to claim a lien must be filed within sixty days from the
time the lienor has ceased to furnish materials or render services.
*Held* that this provision was solely in the interest of the landowner,
and that he could not object if the notice was given before the lienor
had ceased to furnish material or render services.

It is not incumbent upon the lienor to allege in his complaint that a
copy of his notice of lien was returned to him.

*Argued October 30th, 1900, reargued January 17th, 1901—decided Feb-
ruary 12th, 1901.

* After the case was first argued the following order was made by
this court : —

"It appears by the complaint that the notice of intention to claim a
lien given to the defendant, was given and served in accordance with the
requirements of § 3020 before its amendment in 1899, which amendment

ACTION to foreclose a mechanic's lien, brought to the Superior Court in New Haven County and tried to the court, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *Error, judgment set aside and cause remanded.*

The case is sufficiently stated in the opinion.

*Albert P. Bradstreet,* for the appellant (defendant).

*Nathaniel R. Bronson,* for the appellee (plaintiff).

ANDREWS, C. J.   The complaint claimed the foreclosure of a mechanic's lien.   The facts as set forth in the finding, are, briefly, these : —

The defendant, Patrick T. Coogan, on the 22d day of July, 1899, made a written contract with Benton A. Irion, which provided that Irion was to build a dwelling-house for him.   If Irion completed the house, furnishing all the material and doing all the work, then a certain sum was to be paid; if he neglected, refused or in anywise failed to complete the house, then a less sum was to be paid.   The contract pointed out the way in which this lesser sum was to be ascertained. Irion did neglect and omit to complete the house to a very material extent.   Taking the account between Irion and Coogan as it is shown, and applying to it the stipulations of the contract, it appears that the largest sum which Irion could demand or collect under its terms for all the services he rendered and all the materials he furnished, would be $1,618.32.   This is so, for the reason that this is the price which Coogan agreed by that contract to pay, and Irion agreed to accept for the services rendered and materials furnished by Irion in and about the said dwelling-house.

---

was in force at the time of the transaction.   Neither party has discussed the question whether this seeming defect is of such a nature that the judgment should be reversed on that ground upon this appeal.

"The case is continued to the January, 1901, term for the third judicial district, and a reargument ordered, limited to the question above stated."

After the making of the contract Irion agreed with the present plaintiff, the Waterbury Lumber & Coal Company, to furnish lumber to be used by him in building the said house. The plaintiff did furnish him lumber to the amount of $1,435.79. It is not stated, and it does not appear, that the contract between the plaintiff and Irion was known to Coogan or was ever assented to by him prior to the time, October 12th, 1899, when the plaintiff gave notice of its intention to claim a lien. At that time Irion had abandoned his contract, and a few days later the plaintiff ceased to furnish lumber. The plaintiff as such subcontractor seeks in this action to collect its debt against Irion.

The trial court decided this case, as it would seem from the memorandum of decision, upon the theory that a radical change was made in the law of this State respecting mechanics' liens by the statute of 1855; to the effect that a subcontractor seeking to enforce such a lien was not limited to the amount due from the proprietor to the original contractor, but had a direct lien against the proprietor for all the services and materials he had furnished.

We think that court was mistaken as to any such change having been made. Statutory liens on real estate for improvements put upon them otherwise than by contract with the owner, are of two classes. These may be imposed in favor of a subcontractor because he is equitably entitled to a lien that would otherwise attach in favor of the contractor; or, under certain circumstances, they may be imposed on the ground that the improvements have so enhanced the value of the estate that it would be inequitable to allow the owner to be enriched at the expense of him by whom they were made. The statute of 1855 was one of the former class. *Spaulding* v. *Thompson Eccl. Society*, 27 Conn. 573, 577. The lien was to be measured not by the amount of added value, but by the amount which the labor and materials cost, not exceeding the contract price.

And it seems to us that the statutes since that date indicate that no such change was intended to be made. Prior to 1855 a lien by a subcontractor was limited to the amount " due

from the proprietor." These or equivalent words were in all the Acts. Since that time the language of the several statutes is that the lien of a subcontractor shall not attach in the whole to a greater amount than the proprietor agreed to pay to the original contractor. These statutes also provide for the deduction from that amount of such payments as the proprietor may have made in good faith, before he received notice of any intended lien. Public Acts of 1856, Chap. 64. If all the parties in every lien case acted in good faith and fully kept their contracts, these provisions would describe the same sum. The amount " due from the proprietor " would be precisely the amount which the contractor had agreed to take, less the payments he had made in good faith. The question, then, in the present case, may be stated in this way: What amount did the defendant by his contract agree to pay Irion for the services rendered and materials furnished by him in the construction of the said house?

The latest law in this State governing mechanics' liens is Chap. 121 p. 1052, of the Public Acts of 1899. The plaintiff must recover under that Act if he can recover at all. Its contract with Irion was made after that Act went into effect. The second section of the chapter named enacts—and this is a reenactment of the previous statute—that "no such lien shall attach to any building or its appurtenances, or to the land on which the same may stand, in favor of any person, to a greater amount in the whole than the price which the owner agreed to pay for such building and its appurtenances." When we read the contract which the defendant made with Irion and take note of the provisions of article four of that contract, we see that he never agreed to pay $4,100 for the house; but only $4,100 less such sum, if any, as he might have paid to make good the defaults or omissions of Irion. The defendant did not agree to pay $4,100, unless Irion completed the house. The finding shows that he did not complete it. That the defendant was obliged to pay and did pay to make good his defaults and omissions—and the sum was found to be reasonable—the sum of $2,481.68. The contract says that this sum is to be deducted from the amount of the contract; but

that if any balance on the amount of this contract remains after the completion of the work, the same shall belong to the contractor or the person legally representing him. The defendant, then, has by his said contract agreed to pay for his said house only $4,100, less $2,481.68, that is, $1,618.32. According to the finding that is the price which he agreed to pay for it; and that is the price which Irion agreed to accept. *Spaulding* v. *Thompson Eccl. Society*, 27 Conn. 573.

The second section of Chap. 121 of the Public Acts of 1899 further enacts—and this is also a re-enactment—that in determining the amount to which any lien or liens shall attach upon any land or building, "the owner of such land or building shall be allowed whatever payments he shall have made, in good faith, to the original contractor or contractors, before receiving notice of such lien or liens." The finding is that the defendant had paid to Irion, in good faith, before he received notice of the lien, the sum of $1,000. That sum it is conceded must be allowed to the defendant. The price, then, which the owner, *i. e.* the defendant, agreed to pay for the said house, was $1,618.32, from which is to be deducted the $1,000 paid before notice of the lien. This leaves $618.32. The finding further shows, and this is admitted by the plaintiff in the reply to the answer, that since the bringing of this suit, to wit, on the 16th day of April, 1900, the plaintiff has received from the defendant the sum of $618.22 to apply on its claim; for which it has given credit. There was, then, due to the plaintiff only the sum of ten cents. For that amount, and for any interest the court may find to be justly due, it is entitled to have judgment.

The Act of 1899 provided that no subcontractor in the position of the plaintiff should be entitled to claim a lien, unless he should, within sixty days from the time he ceased to furnish materials or render services, give written notice to the owner that he had so commenced, and intended to claim a lien. The complaint alleges, and the court has found, that such a notice was given on October 12th, but the service and materials were furnished up to October 25th. The certificate of lien, which is made a part of the complaint, also states that

a copy of the notice was left with the town clerk of Waterbury, but does not state that any such copy was returned to the lienor. The object of giving a notice to the landowner is solely to protect his interests. The earlier after the lienor commences to render services or furnish materials that information of his intention to claim a lien for them is given to the landowner, the better for the latter. We do not think, therefore, that the defendant is in any position to complain that the notice was given on October 12th. This was for his benefit. The plaintiff in effect simply waived a right to a longer delay of his notice.

That a copy of the notice was left with the town clerk, was immaterial. It harmed nobody and benefited nobody. It does not appear whether a copy was returned to the maker, but we do not think that was a matter which the plaintiff was bound to plead.

There is error; the judgment is set aside and the case is remanded to the Superior Court that judgment may be rendered in accordance with this opinion.

In this opinion TORRANCE and BALDWIN, Js., concurred; HAMERSLEY and HALL, Js., dissented.