ELMER SEAMAN *v.* CLIMATE CONTROL CORPORATION
ELMER SEAMAN *v.* BRANFORD N. O. NELSON COMPANY

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued May 8—decision released July 29, 1980

*Jerome D. Elbaum,* with whom was *Martha J. Friar,* for the appellant (plaintiff in each case).

*Charles A. Sherwood,* for the appellees (defendant in each case).

*William J. Egan* and *Clifford J. Grandjean* filed a brief as amici curiae.

*Robert F. McWeeny* and *Karl Fleischmann* filed a brief as amici curiae.

PETERS, J. The sole issue on this appeal is whether a second tier subcontractor has a right to a mechanic's lien against the owner's property when the owner owes money to the general contractor, but the first tier subcontractor has been fully paid by the general contractor. The plaintiff, Elmer Seaman (hereinafter Seaman), brought an application in Superior Court, pursuant to General Statutes § 49-35a, to discharge two mechanic's liens filed by the defendants Climate Control Corporation (hereinafter Climate Control) and Branford N. O. Nelson Co., d/b/a Branford Plumbing and Heating Supply Co. (hereinafter Branford) on certain real property owned by Seaman in Norwalk. The trial court, *Berdon, J.*, rendered judgment for the defendants and the plaintiff has appealed.

The trial court's findings of fact are largely derived from a stipulation of the parties.[1] The findings establish the following: The plaintiff, Seaman, as owner, contracted with Seaman Construction Co., Inc., as general contractor, to construct apartment housing for the elderly on the Seaman property. Seaman is president of Seaman Construction Co. The general contractor thereafter entered into a subcontract with Miami Plumbing and Heating Contractors, Inc. (hereinafter Miami) for the installation of plumbing and related equipment at a contract price of $140,000. In performance of its subcontract, Miami purchased supplies and materials from Branford and services from

---

[1] The appellant's single attack on the finding of facts seeks to add a paragraph of the draft finding. Since this paragraph concerns a fact not material to the trial court's conclusions of law there is no basis for its inclusion in the finding. Practice Book, 1978, §§ 3034 (2) (b), 3039, 3045; *Rushchak* v. *West Haven,* 167 Conn. 564, 566, 356 A.2d 104 (1975); *Phoenix Mutual Life Ins. Co.* v. *Brenckman,* 148 Conn. 391, 394, 171 A.2d 194 (1961).

Climate Control. Branford and Climate Control dealt solely with Miami, a first tier subcontractor. The defendants had no contractual relationship with either Seaman or Seaman Construction Co. nor was their performance in any way directed by Seaman or Seaman Construction Co. Neither Seaman nor Seaman Construction Co. ever had any control or charge over Miami's purchasing of supplies, materials and services from the defendants.

When Branford and Climate Control notified Seaman of their intentions to file mechanic's liens pursuant to General Statutes § 49-33;[2] see General Statutes §§ 49-34 and 49-35; Seaman Construction Co. had substantially paid Miami the full subcontract price of $140,000.[3] At that time the owner still owed the general contractor $89,157 pursuant to their contract. The money expended to complete the work left unfinished when Miami voluntarily abandoned its subcontract was $8005.91.

---

[2] General Statutes § 49-33 then provided in pertinent part: "MECHANIC'S LIEN. PRECEDENCE. RIGHTS OF SUBCONTRACTORS. If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and such claim is by virtue of an agreement with or by consent of the owner of the land upon which such building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building, with the land on which it stands or such lot or in the event that such materials were furnished or services were rendered in the site development or subdivision of any plot of land, then such plot of land, shall be subject to the payment of such claim."

[3] It is a fact, but of no significance to the case, that Miami had defaulted on its subcontract and had left the job voluntarily when the project was substantially completed and less than $5000 of the contract price remained unpaid by the general contractor.

Having met the requirements of notice to the owner under General Statutes §§ 49-34 and 49-35, Branford filed a mechanic's lien in the amount of $40,697.66 for the balance due for materials furnished for the construction project under its contract with Miami. Climate Control filed its lien in the amount of $7702 for services rendered in connection with the same project under its contract with Miami. The parties have stipulated, and the trial court found, that the amount owed Climate Control is $6526. The total amount claimed pursuant to the Branford and the Climate Control liens is thus substantially less than the amount remaining due from the owner, Seaman, to the general contractor, Seaman Construction Co.

Before we reach the specific question on this appeal, it is well to put into context the relationships between owners, contractors and subcontractors under our mechanic's lien law. Those who provide services or materials in connection with the construction of a building are entitled to claim a lien on the land that they have improved if they fall into one of two categories. Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials. General Statutes § 49-33.[4] Lienors in the second category must give timely notice of their intent to claim a lien in order to perfect their lien, while those in the first category need not give such notice. General Statutes § 49-35. Lienors in the second category

[4] The mechanic's lien statute was technically revised in 1979. Public Acts 1979, No. 79-602. Since that revision does not affect this case, we will refer to the relevant provisions as they existed before the revision.

include subcontractors and persons who furnish materials or services by virtue of a contract with the original contractor or with any subcontractor, that is to say at least first and second tier subcontractors. General Statutes § 49-35. No mechanic's lien may exceed the price which the owner has agreed to pay for the building being erected or improved, and the owner is entitled, furthermore, to credit for payments made in good faith to the original contractor before receipt of notice of such a lien or liens. General Statutes §§ 49-33 and 49-36. If the contract price which the owner agreed to pay the original contractor is insufficient to cover all the liens, claimants other than the original contractor are to be paid first, and, if necessary, on a pro rata basis. General Statutes § 49-36.

These general observations help to clarify what is not at issue in this case. The subcontractors, even though they are second tier rather than first tier subcontractors, are prima facie within the ambit of the mechanic's lien law. It is not necessary to their lien status that they have any direct contractual relationship either with the owner or with the general contractor (denominated the original contractor in the statutes). They have concededly given timely notice to the owner, in proper form, of their liens. There is an identifiable fund which appropriate claims for mechanic's liens may reach, since the owner has retained an unpaid balance due under his contract with the general contractor that exceeds in amount the totality of the mechanic's lien claims.

The sole question on this appeal, as in the trial court, is whether the defendants, second tier subcontractors, are to be denied their liens because the first tier subcontractor with whom they contracted

has been paid in full by the general contractor. The trial court held that, in light of the statute governing mechanic's liens, this fact should not bar their recovery, and we agree.

The parties are agreed that resolution of the rights of the plaintiff depends primarily upon the meaning of General Statutes § 49-33. In interpreting this section, the complexity of which should not be underestimated; see *Stone* v. *Moomjian,* 92 Conn. 476, 484, 103 A. 635 (1918); we are guided by well-settled principles of construction. Although the mechanic's lien law creates a statutory lien in derogation of the common law, its remedial purpose to furnish security for a contractor's labor and materials requires a generous construction. *Camputaro* v. *Stuart Hardwood Corporation,* 180 Conn. 545, 550, 429 A.2d 796 (1980); *Stone* v. *Rosenfield,* 141 Conn. 188, 191, 104 A.2d 545 (1954); *City Lumber Co.* v. *Borsuk,* 131 Conn. 640, 645, 41 A.2d 775 (1945). Even bearing in mind the statute's beneficent purpose, we are, however, constrained by the language of the statute as we find it, and cannot rewrite the statute or adopt the reasoning of precedents in other jurisdictions with different statutes. *Camputaro* v. *Stuart Hardwood Corporation,* supra; *New Haven Orphan Asylum* v. *Haggerty Co.,* 108 Conn. 232, 236, 142 A. 847 (1928); *Hartford Builders Finish Co.* v. *Anderson,* 99 Conn. 343, 345, 122 A. 76 (1923).

Two sentences in § 49-33[5] are central to the arguments of the parties. "No mechanic's lien shall

---

[5] "[General Statutes] Sec. 49-33. MECHANIC'S LIEN. PRECEDENCE. RIGHTS OF SUBCONTRACTORS. If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and such claim is

attach to any . . . building . . . in favor of any subcontractor to a greater extent in the whole than the amount which the owner has agreed to pay to any person through whom such subcontractor claims . . . . Any such subcontractor shall be subrogated to the rights of the person through whom such subcontractor claims . . . ." The plaintiff urges that the second sentence subrogates the second tier subcontractor to the rights of the first tier subcontractor while the defendants claim to be subrogated to the rights of the general contractor.

---

by virtue of an agreement with or by consent of the owner of the land upon which such building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building, with the land on which it stands or such lot or in the event that such materials were furnished or services were rendered in the site development or subdivision of any plot of land, then such plot of land, shall be subject to the payment of such claim. Such claim shall be a lien on such land, building and appurtenances or lot or in the event that such materials were furnished or services were rendered in the site development or subdivision of any plot of land, then on such plot of land and shall take precedence over any other encumbrance originating after the commencement of such services, or the furnishing of any such materials, subject to apportionment as provided in section 49-36. If any such liens exist in favor of two or more persons for materials furnished or services rendered in connection with the same construction, raising, removal or repairs of any building or any of its appurtenances, or in the improvement of any lot, or in the site development or subdivision of any plot of land no one of such persons shall have any priority over another except as hereinafter provided. If any instrument constituting a valid encumbrance upon such land other than a mechanic's lien is filed for record while such building is being constructed, raised, removed or repaired, or such lot is being improved, or such plot of land is being improved or subdivided, all such mechanic's liens originating prior to the filing of such instrument for record shall take precedence over such encumbrance and no such lien shall have priority over any other such lien, but such encumbrance and all such liens shall take precedence over any mechanic's lien which originates for materials

These disparate interpretations are crucial to this appeal, since the first tier subcontractor, having been fully paid, has no right to which anyone could be subrogated, while the general contractor, as yet partially unpaid, remains a suitable candidate for subrogation. The parties are at odds both about the significance of the exact wording of § 49-33 and about its relationship to our existing case law.

This court has had only one occasion to rule upon the rights of a second tier subcontractor after full payment to the first tier subcontractor. In *Barlow*

furnished or services rendered after the filing of such instrument for record, but no one of such liens originating after the filing of such instrument for record shall have precedence over another. If any lienor waives or releases his lien or claim of precedence to any such encumbrance, such lien shall be classed with and have no priority over liens originating subsequent to such encumbrance. No mechanic's lien shall attach to any such building or its appurtenances or to the land on which the same stands or to any lot or to any plot of land, in favor of any subcontractor to a greater extent in the whole than the amount which the owner has agreed to pay to any person through whom such subcontractor claims subject to the provisions of section 49-36. Any such subcontractor shall be subrogated to the rights of the person through whom such subcontractor claims, except that such subcontractor shall have such a lien or right to claim such a lien in the event of any default by such person subject to the provisions of sections 49-34, 49-35 and 49-36, provided the total of such lien or liens shall not attach to any building or its appurtenances, or to the land on which the same stands or to any lot or to any plot of land, to a greater amount in the whole than the amount by which the contract price between the owner and such person exceeds the reasonable cost, either estimated or actual, as the case may be, of satisfactory completion of the contract plus any damages resulting from such default for which such person might be held liable to the owner and all bona fide payments, as defined in section 49-36, made by the owner before receiving notice of such lien or liens. In the case of the removal of any building, no such mechanic's lien shall take precedence over any encumbrance upon the land to which such building has been removed which accrued before the building was removed upon the land. Any mechanic's lien may be foreclosed in the same manner as a mortgage."

*Brothers Co.* v. *Gaffney*, 76 Conn. 107, 55 A. 582 (1903), we sustained the claimant's mechanic's lien.[6] "The plaintiff's right to a lien is given solely by statute, and is not made to depend in any way upon the act of the original contractor in paying or not paying his immediate subcontractor. The legislative conditions upon which the plaintiff's right to a lien is made to depend do not include such an act, and if the court should make such an act one of these conditions, that would be an act of judicial legislation rather than one of construction and interpretation. If the original contractor is, under the present

[6] The mechanic's lien statute then in force was General Statutes (Rev. 1902) § 4135, which provided: "If any person shall have a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal, or repairs of any building, or any of its appurtenances, and such claim shall be by virtue of an agreement with or by consent of the owner of the land upon which such building is erected or has been moved, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building with the land on which it stands shall be subject to the payment of such claim. Such claim shall be a lien on such land, building, and appurtenances, and shall take precedence of any other incumbrance originating after the commencement of such services, or the furnishing of any such materials, subject to apportionment as provided in [predecessor of § 49-39]; but in case of removal no such lien shall take precedence of any incumbrance upon the land to which the building is removed which accrues before the building has been actually moved upon the land. Said premises may be foreclosed by the owner of such claim in the same manner as if held by mortgage."

Prior to 1879, a person furnishing materials or services by virtue of a contract with a subcontractor was not entitled to a lien. *Alderman* v. *Hartford & New York Transportation Co.*, 66 Conn. 47, 52–53, 33 A. 589 (1895); see *Barlow Brothers Co.* v. *Gaffney*, 76 Conn. 107, 110, 55 A. 582 (1903); Melvin, "Mechanic's Liens – A Review of Connecticut Cases," 4 Conn. B.J. 104, 112 (1930). The statute was subsequently amended to provide a lien right in favor of materialmen and laborers furnishing goods and services under an agreement with a subcontractor. *Barlow Brothers Co.* v. *Gaffney*, supra, 110–11. Cf. *Alling's Sons Co.* v. *Cheshire Street Ry. Co.*, 83 Conn. 82, 91–93, 75 A. 143 (1910) (interpreting a lien statute pertaining solely to railroads).

law, unprotected, in that he may be compelled to pay twice for the same work and materials, the fault is not with the plaintiff, and the remedy must be sought in the legislature and not in the courts." Id., 112.

The plaintiff mounts a two-fold attack on *Barlow Brothers*. One prong of this attack relies on the language in cases decided both before and after *Barlow Brothers* in which this court used the theory of subrogation to describe our mechanic's lien statute. The other prong relies on the amendment to the mechanic's lien statute in 1925, twenty-two years after *Barlow Brothers* was decided, to incorporate expressly the subrogation language of the intervening cases. Examination of both of these lines of attack demonstrates that neither is persuasive.

It is true that in a series of cases beginning with *Waterbury Lumber & Coal Co.* v. *Coogan,* 73 Conn. 519, 48 A. 204 (1901), and *Tice* v. *Moore,* 82 Conn. 244, 73 A. 133 (1909), this court elaborated a subrogation theory of lien claims for our mechanic's lien law. Some statutes in other states justify mechanic's liens on the owner's property on the basis that the owner is otherwise unjustly enriched by the improvement of his property. *Tice* v. *Moore,* supra, 248; *Waterbury Lumber & Coal Co.* v. *Coogan,* supra, 521; see note, "Mechanics' Liens and Surety Bonds in the Building Trades," 68 Yale L.J. 138, 142–45 (1958). That is not our law. In this state, a subcontractor's right to a mechanic's lien is said to flow from his equitable entitlement to the lien which would otherwise attach in favor of the general contractor. *Tice* v. *Moore,* supra, 248–49; *Waterbury Lumber & Coal Co.* v. *Coogan,* supra, 521. Subrogation is consistent with, and an integral

part of, our statutory provisions limiting the totality of mechanic's liens to the unpaid contract debt owed by the owner to the general contractor.

The subrogation theory, per se, does not resolve the present controversy because it provides no answer to the question, subrogated to whom? In light of the obvious linkage, however, between the subrogation theory and the limitation of the lienable fund to the unpaid obligation to the *general* contractor, we see no reason to read the theory restrictively to bar these claimants. In all of the reported cases in which subrogation was used to defeat a mechanic's lien claim, it was the general contractor who had no surviving right to which the claimant could be subrogated. *Tice* v. *Moore,* supra, 249; *Waterbury Lumber & Coal Co.* v. *Coogan,* supra; see also *Drazen Lumber Co.* v. *Jente,* 113 Conn. 344, 347–48, 155 A. 505 (1931); *Avery* v. *Smith,* 96 Conn. 223, 228, 113 A. 313 (1921). In the only second tier subcontractor case, *Barlow Brothers,* the claimant prevailed. It is noteworthy that the subrogation cases were decided in close temporal proximity to *Barlow Brothers; Waterbury Lumber* in 1901, *Barlow Brothers* in 1903, and *Tice* v. *Moore* in 1909. This court then perceived no apparent inconsistency among them, and we see none now. In sum, our early case law, in order to protect the owner from double payment, adopted a subrogation theory limiting subcontractors to unpaid claims of general contractors. Default of, and prior payments to, intermediary first tier subcontractors did not bar the claims of second tier subcontractors.

Against this background of the reported cases, the legislative amendment of § 49-33 in 1925 appears to be a clarification of existing law, rather than, as

the plaintiff urges, a belated rejection of *Barlow Brothers*. The legislature is presumed to have been aware of the decision in *Barlow Brothers Co.* v. *Gaffney,* supra, and of the subrogation cases when it amended the mechanic's lien statute. *State* v. *Kyles,* 169 Conn. 438, 442, 363 A.2d 97 (1975); *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968). "Furthermore, there is a presumption that an amendatory act does not change the existing law further than is expressly declared or necessarily implied." *Norwalk* v. *Daniele,* 143 Conn. 85, 89, 119 A.2d 732 (1955); *Klapproth* v. *Turner,* supra.

The amendment to the mechanic's lien law in 1925 added language subrogating the subcontractor seeking a mechanic's lien to "the rights of the person through whom such subcontractor shall claim."[7] This language contains the same latent ambiguity as to the referent of "the person through whom" such subcontractor shall claim as did the preceding case law, and must be read in the light of the understanding afforded by the prior case law. Had the legislature wished to limit further the rights of second tier subcontractors to obtain liens against the owner, it would have been easy enough to link the subcontractor's claim to the person with whom such subcontractor "shall have contracted." The use instead of "the person through whom such subcon-

---

[7] By Public Acts 1925, c. 130, the legislature added to what was then General Statutes (Rev. 1902) § 4135 (now § 49-33) the following language: "No mechanic's lien shall attach to any such building or its appurtenances or to the land on which the same may stand in favor of any subcontractor to a greater extent in the whole than the amount which the owner shall have agreed to pay to any person through whom such subcontractor shall claim subject to the provisions of said section [49-36]. Any such subcontractor shall be subrogated to the rights of the person through whom such subcontractor shall claim."

tractor claims" can be understood, consistently with
the case law, to refer to the necessity for the con-
sent of "some person having authority from or
rightfully acting for such owner." General Statutes
§ 49-33. The statute thus requires that the work of
subcontractors must be authorized by the general
contractor, either directly or indirectly, in order to
be lienable. Just as the determination of whether
there remains a lienable fund depends upon the pay-
ments made under the contract between the owner
and the general contractor, just as the determina-
tion of lienability depends upon authority derived
from the general contractor, so too subrogation
looks to the claims of the general contractor, under
the 1925 revision as under the case law.

No different construction is compelled by the stat-
ute's reference to "*the* person through whom such
subcontractor claims." (Emphasis added.) The
plaintiff argues that the prefatory "the" is restric-
tive, and therefore subrogates the second tier sub-
contractor to the rights of the first tier subcontrac-
tor. It is true that the sentence immediately pre-
ceding the subrogation sentence speaks of "*any*
person through whom" the subcontractor claims.
(Emphasis added.) The earlier sentence limits all
mechanic's lien claimants to the fund created by
payments owed to the general contractor, a fund
described as "the amount which the owner has
agreed to pay to any person through whom such
subcontractor claims." Despite the plaintiff's argu-
ment to the contrary, we conclude, as did the trial
court, that "the person" means no more than a
reference to the "any person" of the preceding sen-
tence. This confirms our reading of the statute as
looking to subrogation to the claims of the general
contractor.

Our construction is further supported by an examination of other provisions of the mechanic's lien law which we must interpret so as to preserve a harmonious whole. *Bahre* v. *Hogbloom,* 162 Conn. 549, 554, 295 A.2d 547 (1972); *Purcell, Inc.* v. *Libbey,* 111 Conn. 132, 136, 149 A. 225 (1930); *New Haven Orphan Asylum* v. *Haggerty Co.,* 108 Conn. 232, 239, 142 A. 847 (1928). Although the rights of subcontractors of the first and second tier are governed by a number of different strictures, none distinguishes between these two classes of claimants. When § 49-33 was amended, in 1953, to correct the problem uncovered by *Rowley* v. *Salladin,* 139 Conn. 642, 96 A.2d 219 (1953),[8] it extended the lienable fund for the benefit of all subcontractors. Under § 49-36,[9] claims on the lienable fund are to be apportioned pro rata among all subcontractors without regard to their rank; significantly, all subcontractors are preferred to the general contractor if the lienable fund is inadequate to cover outstanding claims. See *Stone* v. *Moomjian,* 92 Conn. 476, 484, 103 A. 635 (1918).

[8] In that case, this court had interpreted the subrogation requirement to allow the owner a windfall in the situation where the cost of completing the building was less than the balance remaining to be paid under the original contract.

[9] "[General Statutes] Sec. 49-36. LIENS LIMITED; APPORTIONMENT; PAYMENTS TO ORIGINAL CONTRACTOR. No such lien shall attach to any building or its appurtenances, or to the land on which the same stands, or any lot, or any plot of land, in favor of any person, to a greater amount in the whole than the price which the owner agreed to pay for such building and its appurtenances or the development of any such lot, or the development of any such plot of land. When there are several claimants and the amount of their united claims exceeds such price, the claimants, other than the original contractor, shall be first paid in full, if the amount of such price is sufficient for that purpose; but, if not, it shall be apportioned among the claimants having such liens, other than the original contractor, in proportion to the amount of the debts due them respectively; and the court having jurisdiction thereof, on application of any person

The plaintiff urges finally that the construction of § 49-33 that we adopt is fundamentally inequitable to owners and general contractors, and results in the unjust enrichment of second tier subcontractors. The plaintiff takes umbrage at the trial court's suggestions about the availability of contractual devices, such as surety bonds and lien waivers, to protect the owner or the general contractor from fiscally irresponsible first tier subcontractors. The trial court could not and did not determine that such contractual alternatives were legally mandated or practically advisable. It is therefore tilting at windmills to translate his remarks into a judicial invasion of legislative authority to determine when surety bonds should be statutorily required. That bonding may be feasible or even desirable does not make it mandatory. How the risk of defaulting first tier subcontractors should be allocated between the owner and the general contractor is not an issue presently before us, although we observe that contractors generally are deemed to make a number of implied warranties, including the warranty that there are no outstanding liens. Cf. Uniform Commercial Code §§ 2-312 and 3-417, General Statutes §§ 42a-2-312 and 42a-3-417. The spectre of unjust enrichment is raised by the possibility that a second tier claim-

interested, may direct the manner in which such claims shall be paid; but, in determining the amount to which any lien or liens shall attach upon any land or building, or lot or plot of land, the owner of such land or building or lot or plot of land shall be allowed whatever payments he has made, in good faith, to the original contractor or contractors, before receiving notice of such lien or liens. No payments made in advance of the time stipulated in the original contract shall be considered as made in good faith, unless notice of intention to make such payment has been given in writing to each person known to have furnished materials or rendered services at least five days before such payment is made."

ant's valuation of his claim for lien purposes might exceed the contract price to which he had previously agreed. The short answer to this argument is that it finds no support in the record, the parties having stipulated to the amounts justifiably claimed by the two defendants.

There is no error.

In this opinion the other judges concurred.