[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
HISTORY OF THE PROCEEDINGS IN SUPERIOR COURT
On April 1, 1992, Red Coach Trucking Co. filed two separate mechanic's liens against properties constituting the Reidville development site in Waterbury, Connecticut, where Red Coach rendered its services between September 1991 and January 1992. Thereafter, on April 9, 1992, the plaintiff filed an application with the court seeking the discharge or reduction of these liens.
On April 27th and 28th, 1992, this court held an evidentiary hearing during which the defendant presented its case. Without hearing the plaintiff's case or acting on the plaintiff's motion to file a brief in support of its position, this court issued a memorandum of decision on May 8, 1992, holding that the lienor had established probable cause to sustain the validity of his liens. Shortly thereafter, the plaintiff filed a motion requesting a full and fair meaningful opportunity to present evidence to challenge the defendant's claims.
On June 2, 1992, in the interest of justice, this court used its discretion to grant plaintiff's motion for a re-hearing and vacated its order finding probable cause. Over the course of the next two months, the court heard extensive evidence from both parties. Briefs were submitted by both the defendant and the plaintiff in August of 1992.
FINDINGS OF FACT
The plaintiff, Reidville Commercial Associates Limited Partnership ("Reidville") brings this action pursuant to Conn. Gen. Stat. 49-35a et. seq., to discharge two mechanic's liens filed against property it owns which is a construction project for the expansion of an existing shopping center in Waterbury, CT Page 2714 Connecticut. The lienor, Pat Bennett d/b/a Red Coach Trucking, Inc., has filed two separate liens with an aggregate value of $75,000.
The plaintiff, Reidville, hired Konover Construction Company, Inc., as the general contractor for the expansion project. Konover in turn contracted with D S Brothers Construction Co., Inc. ("D S") to clear the site for expansion by blasting and removing what the parties described during the hearing as a mountain. D S signed a written contract with Konover (This document was not introduced into evidence.). Subsequently, D S, through its president, Steve Praskievicz, contracted with Red Coach Trucking ("Red Coach"), to assist in the expansion project. Red Coach agreed to haul rock and fill from the site and provide a place to dump the material it hauled at no cost to D S. It is undisputed by the parties that in consideration for its services, Red Coach was to keep all the rock and fill it hauled. Neither is it disputed that Red Coach was to pay for its own trucking costs. Furthermore, the parties agree that they never discussed money as compensation for the services provided by Red Coach; only rock.
Pat Bennett, the lienor, testified that after observing the size of the mountain on the Reidville property, he made the deal with Praskievicz because he expected to gain 350,000 tons of rock which he would use at the rock quarry he owns in Naugatuck. Bennett further testified that on September 7, 1991, at his Naugatuck quarry, he entered into an oral contract with Praskievicz which entitled Red Coach to receive all the rock excavated from the site. Bennett went on to say that two days later, Praskievicz refined their initial agreement to the extent that Red Coach was not only to haul and store all the rock excavated from the site, but all the fill as well. This meant that Bennett would have to take the bad with the good. Bennett agreed to this modification. Bennett's testimony regarding the amount of overburden he expected to find at the site is conflicting. At one point, he testified that he expected no more than 25%. At another point, he testified that he did not expect any. No test pulls were conducted to determine how much of the mountain was rock as opposed to dirt and valueless overburden.
Steven Praskievicz, the plaintiff, alleges that he represented to Bennett that he could keep all the rock and fill he hauled, but that he never represented to Bennett that he would receive all the rock and fill excavated from the site. Praskievicz testified that under the terms of his contract with Konover, CT Page 2715 Konover retained ownership of all material excavated but that he was permitted by Konover to dispose of some of it at their discretion. Bennett contends that the deal he made with Praskievicz entitling him to all the material excavated was at some point discussed in the presence of a Konover representative whom he refers to as Mr. Quib. The agreement between D S and Red Coach was never reduced to writing. Praskievicz testified that when he requested that Bennett sign a written contract, Bennett responded that he would not put his neck in a noose. Bennett denies that Praskievicz ever requested that he sign a written contract. He testified that the agreement was sealed with a handshake which is customary in the business.
From September 1991 until late December 1991, Red Coach hauled rock and fill from the Reidville Construction site. Additionally, Red Coach hauled rock and fill from the site on 1/15/92. Red Coach received a total of 41,000 tons of rock and fill from the Reidville site. Twenty six thousand tons of the material Red Coach hauled is alleged by Bennett to be valueless overburden which remains stockpiled at his Naugatuck quarry. Fifteen thousand tons was sold to Island Sand Gravel in Shelton, Connecticut. Red Coach concedes that the material it sold to Island Sand Gravel is rock or stone.
At some point between December 21st and 26th, 1991, D S instructed Red Coach to cease hauling until further notice. It was explained to Red Coach that there was a blasting moratorium in effect due to the hazards involved in blasting near an existing shopping center which was overrun with Christmas shoppers. According to Bennett, Praskievicz also informed Bennett's son that blasting had to be ceased because they were laying pipe. Praskievicz indicated that he would call Red Coach as soon as blasting was resumed. The call never came.
When Bennett did not hear from Praskievicz by mid January, he decided to visit the site to investigate whether, in fact, blasting had been resumed. Bennett alleges that during this visit, he was informed by a Konover superintendent that Praskievicz was then hauling to a job site owned by the City of Waterbury, located approximately a mile and a half from the Reidville site. Bennett testified that he followed trucks from the Reidville site to the site described by the superintendent, but was unable to view the materials that these trucks were hauling. At some point in his testimony, Stephen Praskievicz suggested that large boulders from the Reidville site which were CT Page 2716 refused by Red Coach were being hauled to the new site. Bennett suggested during his testimony that sometime between September and December 1991, Praskievicz entered into what was described as a "sub rosa" agreement with the City of Waterbury whereby the rock and fill excavated from the Reidville site would be hauled to the City owned site. In exchange, Praskievicz would become the preferred developer for several parcels of City owned land. In any event, on January 15, 1992, Bennett's trucks entered the Reidville site and were loaded with excavated material although Praskievicz had not requested that they return. It is unclear whether Praskievicz was at the site on this date or was aware that Bennett's trucks had entered the property until sometime later on. This was the last date that Bennett's trucks entered the Reidville property.
On April 1, 1992, Bennett filed two separate mechanic's liens against the Reidville property. The parties agree that the combined value of the liens is $75,000. Bennett's claim is that in terminating his services after he hauled only 41,000 tons of an anticipated 350,000 tons of rock and fill, D S breached its oral contract with Red Coach. Bennett argues that while he is not seeking damages for breach of contract or lost profits by filing the liens in question, he is seeking to recoup the money he has into the job. Bennett claims that since 26,000 tons of the 41,000 tons of rock and fill Red Coach hauled is valueless overburden, he has suffered a financial loss of $72,000, which he calculates is what it cost him to haul 26,000 tons of valueless overburden from the Reidville site to his quarry in Naugatuck.
Red Coach argues that D S was acting as Reidville's agent when D S procured their services and thus, Red Coach is justified in filing its mechanic's liens against the Reidville property. While the scope of Praskievicz's authority in regard to the Reidville property is not clear, at one point in his testimony in response to a question posed by Attorney Mastronardi during cross examination, Praskievicz responded that in terms of the day to day operations on the site, "what I say goes". Yet, he maintained steadfastly that Konover retained control over the excavated material, allowing him to dispose of some of it only at their discretion.
D S flatly denies that Red Coach received 26,000 tons of valueless overburden. During the hearing, D S spent quite a bit of the Court's time introducing testimony and rock samples in support of their position that the material hauled from the Reidville CT Page 2717 site was boney gravel and rock; not valueless overburden. D S presented evidence that Red Coach hauled material directly from Reidville to Island Sand Gravel and Bennett's Naugatuck quarry on the same day from the same stock pile. They argue that if the material that Island Sand Gravel received is rock, which Red Coach concedes, then Bennett delivered rock to his Naugatuck quarry as well. They further emphasize that even if it were proven that 26,000 tons of the material that Red Coach received is valueless overburden, Red Coach cannot now cry foul in that they agreed to take the bad with the good. D S takes the position that since the parties discussed rock and fill and not money, Red Coach got the consideration it bargained for.
On April 9, 1992, pursuant to C.G.S. 49-35a et seq., Reidville moved to discharge the mechanic's liens filed by Red Coach. Reidville denies that D S was acting as its agent in procuring the services of Red Coach or that they consented to the terms of the agreement between the parties or to pay for the services provided by Red Coach. Reidville contends that any claims that Red Coach has for damages resulting from a breach of contract by D S may be actionable against D S, but not Reidville. Reidville further advances that the claims made by Red Coach are not the proper subject of a mechanic's lien in that Red Coach received the consideration it bargained for. Finally, Reidville argues that Red Coach failed to meet its burden of proof in establishing the validity of its liens under the terms of C.G.S. 49-35a et seq., and thus, the liens filed against Reidville by Red Coach should be discharged. This court will first address plaintiff's claim that the defendant has failed to meet his burden of proof as required by C.G.S. 49-35b because the court's ruling on this issue may be dispositive of this matter should the court determine that the defendant has, in fact, failed to meet his burden of proof under the statute.
 I. A lienor must comply with statutory requirements in order to perfect its claim. H S Torrington Associates v. Engineering Co., 185 Conn. 549, 552 (1981).
Conn. General Statutes 49-35b provides in pertinent part that:
 Upon hearing held on application or motion set forth in C.G.S. 49-35a, the lienor shall first be required to establish that there is probable cause to sustain the CT Page 2718 validity of his lien. . .
 Under the provisions of Conn. Gen. Statutes 49-34, a mechanic's lien is not valid unless the person performing the services or furnishing the materials:
 (1) Within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk, with deeds of land, (a) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of performance of services or furnishing of materials, (b) stating the amount claimed is justly due, as nearly as can be ascertained, and (c) subscribed and sworn to by claimant, and (2) within the same time, or prior to the lodging of the certificate, but not later than 30 days after lodging the certificate, serves a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as provided for the service of notice in Section 49-35.
Reading C.G.S. 49-35a, 49-35b, and 49-34 together, it is apparent that this Court, in ruling upon the plaintiff's motion to discharge the defendant's certificates of lien, must first determine whether the lienor has complied with the statutory requirements necessary to establish the validity of his liens. The lienor must demonstrate that he has complied with the requirements set forth in C.G.S. 49-34, supra.
 II. No Connecticut Court has validated a certificate of mechanic's lien despite the clear absence of a necessary statutory element of the certificate. J.C. Penney Properties, Inc. v. Peter Santella Co., 210 Conn. 511, 515
(1989).
In the J.C. Penney case, supra, (which the plaintiff discusses at some length in his brief beginning with page 20), the CT Page 2719 plaintiff sought the discharge of a mechanic's lien based on the fact that it was not sworn to under oath. The Supreme Court, upon review of the trial court's denial of the plaintiff's application held that the defendant's failure to swear to the facts contained in its mechanic's lien was not a non-essential omission, but rather a clear absence of a necessary statutory element of the certificate. The court remanded the case to the trial court with the direction to render judgment discharging the lien. Significantly the Court noted the absence of
 "any Connecticut case in which a court has validated a certificate of mechanic's lien despite the clear absence of a necessary statutory element of the certificate."
J.C. Penney, supra, at 515.
III. The filing of a certificate of mechanic's lien with the town clerk of the town in which the building lot or plot of land is situated is a necessary statutory element of the certificate which must be established by the lienor in order to sustain the validity of his lien.
The filing of a certificate of mechanic's lien with the town clerk, as set forth in C.G.S. 49-34, like the requirement that the facts contained therein be sworn to, is a necessary statutory element of the certificate.
 C.G.S. Section 49-34(1) provides that the certificate in writing . . . shall be recorded by the town clerk with the deeds of land. . .
 IV. The lienor in this matter has failed to establish that his certificates of lien were properly filed with the town clerk of the town of Waterbury or lodged with the deeds of land as provided by C.G.S. 49-34 in order to sustain their validity.
In the instant case, the lienor, Red Coach Trucking, introduced as defendant's exhibits #5 and #6 copies of two certificates of mechanic's lien which he alleges were filed with the town clerk. However, after a thorough review of these documents, this court cannot ascertain whether, in fact, the defendant properly lodged these certificates with the town clerk of the City of Waterbury or whether they were recorded with deeds of land, as CT Page 2720 required by C.G.S. 49-34.
The section of the defendant's certificates which, if properly filed and recorded, should have been completed and endorsed by the Waterbury Town Clerk remains blank. The defendant has introduced no other evidence to establish that he complied with this necessary statutory element as required in order for this court to sustain the validity of his liens.
Furthermore, the court, after a careful review of the court's file and the evidence presented, is unable to determine whether the defendant's certificates of lien were served upon the owner as required by C.G.S. 49-34. A careful examination of the court's file and the exhibits introduced fails to produce a sheriff's return to establish that true and attested copies of the certificates of lien were served upon the owner or whether if served they were served within the statutory period provided for by C.G.S.49-34.
 V. The lienor failed to establish that his certificates of lien were filed within 90 days after substantial completion of his services as required by statute.
Having made the determination that the defendant has not sustained the validity of his certificates of lien based on his failure to establish that they were properly filed with the Waterbury Town Clerk and lodged with the deeds of land, the court is at a loss to determine whether, in fact, the certificates were filed within the statutory time period.
C.G.S. 49-34 requires a contractor to place a mechanic's lien within 90 days after substantial completion of his work. In the instant case, the court is persuaded that had the defendant established that his certificates of lien were filed by the date alleged, April 1, 1992, they would be subject to discharge as invalid on their face.
There is no stipulation between the parties in the case regarding when the defendant ceased work at the site. However, the plaintiff has presented credible evidence that the defendant was informed that his services were no longer needed after 12/26/91 unless called. The defendant contends that work continued until mid-January. This claim is not supported by the evidence when viewed in conjunction with the facts in this case; on 12/26/91, the defendant was told by D S not to return unless CT Page 2721 called; the defendant was never recalled by D S; the defendant hauled a total of 41,000 tons of material from the Reidville site, most of which was hauled by 12/26/91; on 1/15/92, the defendant entered the site and hauled material on its own initiative. This court does not view one day of hauling as a significant contribution towards the clearing of 41,000 tons of material from the Reidville site. Therefore, the court finds that the defendant substantially completed his services on 12/26/91.
If the lien certificates were filed with the town clerk on April 1, 1992, as alleged, the defendant must not have substantially completed his services before 1/2/92. Given this court's finding that the defendant's services were substantially completed on 12/26/91, the liens, if filed on 4/1/92, were not filed within the 90 day statutory period set forth in C.G.S. 49-34, and are thus, invalid and subject to discharge on this basis alone.
 VI. The lienor failed to establish that the damages claimed are the proper subject of a mechanic's lien.
The defendant admits that neither D S nor Konover discussed money as compensation for his services. The defendant further admits that he agreed to haul rock and fill at no costs to D S and to pay for his own trucking costs. The defendant now, in effect, asks this Court to order Reidville to pay for his trucking costs because D S wrongfully terminated his services although he readily admits that neither Reidville, Konover or D S consented to pay for his trucking costs. "The mere granting of permission for work to be conducted on one's property has never been deemed sufficient to support a mechanic's lien against the property. Hall v. Peacock Fixture Electric Co., 193 Conn. 290, 295.
Alternatively, the defendant asks this Court to sustain the validity of his mechanic's liens on the grounds that the plaintiff would be unjustly enriched by the improvement to its property were the liens to be discharged. Neither theory forms the proper basis to sustain the validity of the defendant's mechanic's liens against the Reidville property.
 Some statutes in other states justify mechanic's liens on the owner's property on the basis that the owner is otherwise unjustly enriched by the improvement of his property . . . That is not our law. Seaman v. Climate Control Corp., 181 Conn. 592, 601, CT Page 2722 436 A.2d 271 (1980).
HELD —
The lienor's failure to establish that he complied with the statutory requirements necessary for this Court to sustain the validity of his certificates of mechanic's liens renders them invalid and subject to discharge. For the foregoing reasons, the plaintiff's application to discharge the defendant's certificates of mechanic's lien is granted. Because the Court's ruling that the defendant failed to establish the validity of his certificates of mechanic's lien is dispositive of this matter, the Court need not address the remaining issues raised by the plaintiff in support of his application for discharge.
COFIELD, J.