[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an application by Fox Cliff Blocks Partnership (hereinafter "Fox Cliff") as owner of certain real estate (lots) in Henley Farms Estates in Andover, Connecticut to declare a mechanic's lien filed by The Balf Co., (hereinafter "Balf") on October 7, 1994 on said real estate invalid and by Fox Cliff and W. Roger Morton (hereinafter "Morton") to declare void a bond in substitution of said lien, in which Fox Cliff is principal and Morton is surety.
After hearings held on January 30, 1995 and February 7, 1995 CT Page 1384-A and the filing of pre-trial and post-trial briefs by the parties, the court finds, based upon the testimony and the documentary evidence presented, as follows:
 1. Fox Cliff is a general partnership owned equally by Morton and Peter H. Cooney and was the owner of the lots (real estate) subject of this application at the time of the filing of the mechanic's lien.
 2. Monroe Homes, Inc., hereinafter "Monroe" is a corporation solely owned by Morton.
 3. Fox Cliff and Monroe are separate entities of which the ownership is different.
 4. Fox Cliff and Monroe entered into a written agreement on May 4, 1994 under which Monroe would be the general contractor to construct residential houses on lots owned by Fox Cliff and the general contractor to have the subdivision road, Oak Farms Road, constructed and/or installed. Monroe would sell the houses to third CT Page 1384-B parties, and at/or about the time of closing Fox Cliff would convey the applicable lot to Monroe for $53,000. Fox Cliff would pay for the road either directly to the first tier subcontractor hired by Monroe or reimburse Monroe for its payments to such subcontractor. From the testimony and a reasonable interpretation of the agreement, it is clear that Monroe would be paid for the houses by the third party purchasers.
 5. Monroe hired Dirt Work Professional Excavating (hereinafter "Dirt Work") to install the road. Dirt Work hired Balf to furnish materials and services for such installation. There was no relationship between Fox Cliff and Balf nor between Monroe and Balf. Dirt Work was a first tier subcontractor and Balf a second tier subcontractor.
 6. Materials and labor were furnished to the site by Balf between July 1, 1994 and July 11, 1994. Balf's bill to Dirt Work was $52,173.99. Dirt Work's price to Monroe was $92,500, which was paid in full by Fox Cliff, its CT Page 1384-C partner Morton and/or Monroe by August 8, 1994. Dirt Work was not paid ahead of schedule, and there is therefore, no evidence any payments were made in bad faith.
 7. Monroe sold its first residential home in this subdivision after the subject lien was filed on October 7, 1994 and, accordingly, the conveyance of the lot by Fox Cliff to Monroe was not due until after October 7, 1994.
It is well settled law in Connecticut that "No mechanic's lien may exceed the price which the owner has agreed to pay for the building being erected or improved,[1] and the owner is entitled, furthermore, to credit for payments made in good faith to the original contractor before receipt of notice of such a lien or liens. General Statutes §§ 49-33 and 49-36." Seaman v.Climate Control Corporation, 181 Conn. 592, 596 (1980). The "original contractor" is generally called the "general contractor."
The second tier subcontractor, in this case Balf, is CT Page 1384-D subrogated to the rights of the general contractor, in this case Monroe, but only to the extent of an identifiable or lienable fund due from the owner to the general contractor. If there is no money due from the owner to the general contractor, at the time of the filing of the lien, then there is no identifiable or lienable fund to which the lien may attach. Seaman v. ClimateControl Corporation, supra.
In the case at bar, there was no money due from Fox Cliff to Monroe. There was never any money due from Fox Cliff to Monroe with the possible exception of the money eventually paid to Dirt Work. Therefore, there was no identifiable or lienable fund despite the strong effort of Balf's counsel to create one. If the amount paid to Dirt Work could be considered an obligation by Fox Cliff to Monroe, (and not simply a pass through as claimed) then it was paid in full long before the filing of the mechanic's lien, and, therefore, there was still no lienable fund.
Balf claims on page three of its reply memorandum dated February 22, 1995 that "Thus, as Fox Cliff's general contractor, Monroe Homes was entitled to be reimbursed its costs for CT Page 1384-E constructing these two homes and also to be paid its profit. It is these reimbursable costs, plus Monroe Homes' profit for building the houses, which constitute the lienable fund." However, the costs and profit mentioned would be due, if from anyone, the third-party purchasers, not Fox Cliff. None of this money was the obligation of the owner to the general contractor, and is, therefore, not a lienable fund.
Fox Cliff and Monroe were and are separate entities; but assuming arguendo that they were one and the same, then Dirt Work would conceivably become the general contractor for the road; but even in that scenario there would be no lienable fund since Dirt Work was paid in good faith long before the lien was filed.
Should there be more protection for a subcontractor if the owner acts as its own general contractor, which is not the case here? Perhaps, but that is something to be considered by the legislature, not the courts.
As for the other issues raised by the applicant it is not necessary to consider them in light of the court's ruling; and in CT Page 1384-F particular since they are now under consideration by the Appellate Court whose ruling will be more permanent than that of this court.
For the foregoing reasons, the application is granted, the mechanic's lien is declared invalid and the bond void.
Rittenband, J.